**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**CITY OF JANESVILLE, a municipal corporation, and the State of Wisconsin, Defendants.**

No. 79–C–481.

United States District Court,
W. D. Wisconsin.

Dec. 13, 1979.

Reuben Daniels, Isaias Ortiz, Equal Employment Opportunity Commission, Milwaukee, Wis., for plaintiff.

David L. Uelmen, Marianne Goldstein, Walter F. Kelly, of Goldberg, Previant & Uelmen, Milwaukee, Wis., and Berta Hoesly, City Atty., Janesville, Wis., for defendant City of Janesville.

David C. Rice, Asst. Atty. Gen., Bronson C. La Follette, Atty. Gen., Madison, Wis., for defendant State of Wisconsin.

## OPINION AND ORDER

JAMES E. DOYLE, Chief Judge.

In a civil action for legal and equitable relief (case number 79–C–477), the original plaintiff Kenneth Jones alleged that by forcing him to retire from his position as Chief of Police for the City of Janesville, the defendants in that action (various officials of the City) had violated his rights under the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq.* (hereinafter ADEA). On October 19, 1979, I entered an order temporarily restraining defendants from hiring a new permanent Chief of Police, which order remains in effect.

The United States Equal Employment Opportunity Commission (hereinafter plaintiff) has brought this present action (79–C–481) against the defendant City and the defendant State to enforce Jones' rights under the ADEA, which action terminates Jones' right to maintain his individual lawsuit.[1] 29 U.S.C. § 626(c). On October 19, 1979, I entered a temporary restraining order in this case as well.

Jurisdiction is present under 28 U.S.C. § 1345.

Presently before me is plaintiff's motion for a preliminary injunction ordering the defendant City to reinstate Jones as Chief of Police, pending trial on the merits. For the purpose of deciding plaintiff's motion for a preliminary injunction, and for no other purpose, I find the facts set forth hereinafter under the heading "Facts."

### Facts

Kenneth Jones was born on June 21, 1924. Jones was appointed the Chief of Police of the City of Janesville by the Board of Police and Fire Commissioners, effective January 2, 1975, and served continuously in that position until his discharge on June 30, 1979.

On June 21, 1979, Jones reached the age of fifty-five. It is the City's policy that "protective service" employees, a term within which the City includes a Chief of Police, will be expected to retire at the end of the calendar quarter in which they reach age fifty-five, unless granted an extension

---

1. In his original complaint Jones also alleged violations of his rights under 42 U.S.C. § 1983, 42 U.S.C. § 1985, Article 4 and the Fifth and Fourteenth Amendments to the United States Constitution. These causes of action are not abated by plaintiff's enforcement of Jones' rights under the ADEA and remain in Jones' original civil suit (79–C–477) against the defendants. Because the defendant City has had full opportunity to respond in 79–C–477 to the factual showings made by Jones, I rely in part upon the record in 79–C–477 in making findings of fact in the present case.

by the City. One year extensions are granted if compulsory retirement would cause the employee personal hardship which can be resolved within a year, or if the retirement will generate management problems for the City which can be resolved by retaining the employee for another year.

Before Jones reached his fifty-fifth birthday, he requested such an extension and it was denied by the Board of Police and Fire Commissioners. The effect of this denial was to compel plaintiff to retire on June 30, 1979. The only basis for the City's decision to compel Jones' retirement was that he had reached the mandatory retirement age. No factors involving the quality of his work entered into the City's decision.

In devising its retirement policy, the City relied upon Chapter 41, Wis.Stats., which provides for a retirement fund for municipal employees and which permits the forced retirement of "protective service" employees at the age of 55. Sections 41.02(23) and 41.11(1), Wis.Stats.

The City regards Chapter 41, Wis.Stats., as a legislative judgment that age is a bona fide occupational qualification for "protective service" jobs. The City has done no studies of its own revealing an empirical relationship between age and an ability to perform a protective service function. Rather, in devising its retirement policy, the City has accepted what it regards as a state legislative judgment that the mandatory retirement age for protective service jobs is "in the best interest of all public safety personnel and the people they are required to serve throughout the state."

As described by the City, the job of the Chief of Police requires the performance of "responsible administrative work directing all activities and employees of the City Police Department." A complete description of the knowledge, skills and abilities necessary to function satisfactorily as Chief of Police includes the following: comprehensive knowledge of modern police administration, the rules and regulations of the Police Department, police science, organization and operation, the use of police records, and the standards by which the quality of

police work is evaluated; an ability to command the respect of officers, to supervise their work, to maintain effective relations with the public and other city employees, to express ideas clearly orally and in writing, and to prepare clear, accurate, comprehensive recommendations and reports; and good physical condition.

The police department's internal administrative structure is a complex coordination of the activities of 70 uniformed personnel and 4 civilians. The chief is responsible for both the efficient operation of that organization and the efficient coordination of the department's activities with the activities of other local, state and national law enforcement agencies. If Jones cannot function as chief pending a full trial on the merits, his administrative and executive skills will seriously deteriorate.

After I temporarily restrained defendant City from permanently replacing Jones, the City created the temporary position of Acting Chief of Police. This position is currently filled by the person who was originally offered a permanent position as Jones' replacement as chief. Immediate reinstatement of Jones as chief pending the outcome of plaintiff's lawsuit will render formal lines of authority within the department vulnerable to intra- and extra-departmental pressures, thus creating the potential for conditions of administrative unmanageability.

### Opinion

■ Plaintiff has made out a prima facie case of age discrimination against Jones under the ADEA, 29 U.S.C. § 623(a), which provides in relevant part:

It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such person's age . . . .

29 U.S.C. § 623(f) contains the following exception to this broad prohibition:

(f) It shall not be unlawful for an employer . . . .—

(1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where *age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business* . . . . [emphasis supplied]

In deciding plaintiff's motion for a preliminary injunction, I must make a judgment about its likelihood of ultimate success on the merits of Jones' claim. But because it is relatively easy for plaintiff to establish Jones' prima facie case under the ADEA, the likelihood of its ultimate success depends on the degree of likelihood that defendants will or will not succeed in showing that age is a bona fide occupational qualification under 29 U.S.C. § 623(f)(1).

■ Because the "bona fide occupational qualification" exemption frees an employer from the ADEA's general requirement that he make an individualized judgment about an older worker's ability, it embodies the risk of permitting on a broad scale the very age stereotyping which the ADEA was passed to prevent. The exemption must therefore be narrowly construed, with the defendant City bearing the burden of showing that its mandatory retirement policy falls within the exemption's terms. *Houghton v. McDonnell-Douglas Corp.*, 553 F.2d 561, 564 (8th Cir. 1977); *Hodgson v. First Federal Savings and Loan Assoc.*, 455 F.2d 818, 822 (5th Cir. 1972). See 29 C.F.R. § 860.102(b).

■ In construing the words "bona fide occupational qualification reasonably necessary to the normal operation of the particular business," I begin with the words "particular business." Although it is possible to consider the entire governmental structure of the city as the "business" in question, it is more reasonable, and it gives more recognition to the word "particular," if the police department of the city is taken as the "particular business."

The "particular business" of the police department of the City of Janesville, at present, consists of that bundle of activities which the people of the city, through their representatives, have decided that that department should perform. The department personnel consists of about 70 uniformed personnel and about 4 civilians. It is a "business" of some sophistication, involving the interplay of a significant number of persons engaged in a variety of activities.

The "normal operation" of that "particular business," therefore, must mean the normal performance of that bundle of coordinated activities; that is, an organic relationship among component jobs which mesh together to yield law enforcement or "protective services." Thus, the normal operation of the police department requires an effective working relationship among the following persons and categories of persons, among others: police officers on foot or in squad cars, patrolling the streets, sometimes chasing and apprehending persons, sometimes controlling crowds, sometimes quieting boisterous parties, sometimes resolving family quarrels, and so on; detectives engaged in interviewing or surveillance; telephone operators and dispatchers responding to and passing on information; records keepers; and an executive supervising the whole range of activity.

Perhaps the operation of the police department is likely to fall short of "normal" if the records keepers are more than 55 years old. Perhaps the operation of the police department is likely to be "normal" if all the patrol officers are older than 55. Perhaps the converse of each of these two propositions is true. But it is quite obvious that the effect of the ages of the department members upon the normalcy or absence of normalcy in the operation of the department can be gauged only by addressing precisely the particular activities of a particular employee or category of employees (dispatchers, for example). The effect of the ages of all of the members of the department upon the normalcy of the department's operation cannot be gauged by addressing only the particular activities of the patrol officers.

Defendant City urges quite a different analytical sequence. It urges that I begin by defining the primary function of the

police department as a whole "particular business," and it suggests as the definition: the protection of life, person, and property and the enforcement of the criminal norms of the state. Defendant City goes on to urge that I must focus on this primary function or core substance of the particular business and not consider marginal or extraordinary aspects of the employer's "particular business." Its contention is that being under fifty-five is a bona fide occupational qualification reasonably necessary to the primary function of the department; that the activities of the chief are intimately related, of course, to this primary function; and therefore that being under fifty-five is a bona fide occupational qualification reasonably necessary to the performance of the chief's activities.

To construe the statutory exemption in the manner urged by defendant City would be to do violence to the Congressional language and the Congressional intent.

The phrase "normal operation of a particular business" is not congruent with "the essence of a particular business" or "the primary function of a particular business." The concept of "necessity" does not relate to the central mission of the business, whether it be a steel mill or a perfume shop or a police department or a school of music. The nature of the particular business is defined by the entrepreneur in the private sector and by political and governmental processes in the public sector. The "particular business," in short, is a given. It is a thing existing in the real world, and its normal operation is also a given, not something the whole of which or the parts of which are to be judicially evaluated in terms of their necessity or importance. "Necessity" is an evaluative concept introduced by Congress only in examining the relationship between an age limitation, on the one hand, and the normal operation of the particular business, on the other. In § 623(f)(1), the word "necessary" modifies "qualification;" it does not modify "business."

To construe the exemption so broadly as defendant City urges, would be to deprive whole classes of older workers of the protection of the ADEA if they worked in "businesses" whose primary function could be said to involve qualities associated with youth, even though particular jobs within those businesses are better performed by older, more experienced people. I am convinced that Congress did not intend a result so at variance with the stated purpose of the Act. My narrower interpretation of the "bona fide occupational qualification" defense is supported by the ADEA's legislative history in which the defense is consistently related to the requirements for particular jobs. S.Rep. No. 493, 95th Cong. (1977); H.R.Rep. No. 527, 95th Cong. (1977), U.S. Code Cong. & Admin.News 1978, p. 504. Although the House report listed law enforcement as an area in which age might be a bona fide occupational qualification, the discussion was in the context of "certain types of particularly arduous law enforcement activity." Virtually all the courts which have construed the defense, have related the age requirement at issue to the duties of the particular job from which the plaintiff was excluded because of his age. *Hodgson v. Greyhound Lines Inc.*, 499 F.2d 859, 863–865 (7th Cir. 1974); *Arritt v. Grisell*, 567 F.2d 1267, 1271 (4th Cir. 1977); *Houghton v. McDonnell-Douglas Corp.*, 553 F.2d 561, 564 (8th Cir. 1977); *Aaron v. Davis*, 414 F.Supp. 453, 461 (E.D.Ark.1976). This interpretation will not eviscerate the clear Congressional intent to prevent broad age stereotyping in employment. At the threshold, defendant City must show a relationship between being younger than fifty-five and the demands of the chief's job.

■ Defendant City has submitted seven reports of the State of Wisconsin Retirement Research Committee in support of its motion in opposition to preliminary relief. The reports contain evidence that the fifty-five retirement age is an expression of the Wisconsin legislature's judgment that being younger than fifty-five is a bona fide occupational qualification for the generic class of "protective service" jobs. The reports do not analyze the specific demands of individual jobs within the broad category of "pro-

tective service," nor do they present any empirical evidence revealing a relationship between the mandatory retirement age and any particular "protective service" job. In fact one report describes the irrationality of the current state classification of protective service jobs by noting that "the necessity of early retirement in the administrative position [in the conservation department] is obviously of less concern than in the case of the law enforcement officer." (Affidavit of Walter F. Kelly, Exhibit F, page 10). At most the documentary evidence submitted by defendants demonstrates that the legislature was not deliberately discriminating against older workers through its mandatory retirement system but was acting on a good faith belief that the public safety required early retirement of all "protective service" employees. None of these reports is relevant to defendants' burden of showing a relationship between being younger than fifty-five and the demands of the chief of police job for the City.

At a hearing on plaintiff's motion for a preliminary injunction, the attorney for the defendant City described several studies allegedly revealing that persons who rise through the ranks of the police have been so affected by the cumulative stresses of the lower level work as to make them less qualified candidates for chief than those not so burdened by so prolonged a police employment history. These studies were not described in the degree of detail necessary for me to evaluate their probative weight, if any.

Before reaching a conclusion dispositive of the motion, I must consider another factor. I believe that management theory entertains the idea that in some circumstances every employee must become capable to perform every activity involved in the normal operation of the particular business, although during a particular period, a particular employee is assigned to perform only a single one or a limited number of those activities. Although the point has not yet been developed in this record, it is reasonable to believe that a police department is the kind of an organization in which this concept of interchangeability and flexibility

and versatility is important, so that rotations and backing-up can occur as events require. Thus, it would not be unreasonable to insist that a uniformed officer performing today as a dispatcher must possess all the qualifications, physical and mental, necessary to perform on patrol tomorrow. With respect to the chief, as the qualifications actually demanded by this defendant City reveal, he or she can reasonably be required to understand thoroughly the nature of the entire range of activities. However, there has been no showing that in a department consisting of about 75 people, normal operations would require that the chief actually perform the activities of a patrol officer or those of a dispatcher, for example.

My examination of the evidence submitted by defendant City and its counsel's description of the additional evidence it proposes to present at trial, leads me to conclude that plaintiff has a reasonable likelihood of sustaining Jones' prima facie case after a full trial on the merits of the "bona fide occupational qualification" defense.

■ The high incidence of unemployment among older workers, "with resultant deterioration of skill, morale, and employer acceptability," was one of the effects of age discrimination which the ADEA was passed to prevent. 29 U.S.C. § 621(a)(3). If Jones is not reinstated to his job during the pendency of plaintiff's action, the deterioration of his skill and morale during that period cannot be cured by a final judgment ultimately reinstating him to his job with back pay. This interim injury is irreparable and sufficient to support a preliminary injunction ordering his reinstatement.

Defendant City argues that immediate reinstatement of Jones "will create serious problems of dual leadership and department manageability," with police personnel experiencing "splits of loyalty and inefficiency of performance"—problems which the City contends outweigh any injury to Jones from a failure to reinstate him. (Defendants' brief in opposition to preliminary relief, p. 12). If these problems should materialize,

they will have been created by the defendant City's decision to compel Jones to retire. In the balancing of hardships which must precede the granting of a preliminary injunction, the defendant City's self-inflicted wound, however real it may prove to be, does not weigh heavily enough to deny plaintiff and Jones relief.

There is no showing that the plaintiff is threatened with any injury at the hands of the defendant State.

### ORDER

Plaintiff's motion for a preliminary injunction is hereby granted.

It is ordered that the City of Janesville reinstate Kenneth Jones to his position as Chief of Police pending a full determination on the merits of plaintiff's action on his behalf.