**MOUNT JOY CONSTRUCTION CO., INC.**

v.

**Jack J. SCHRAMM, Regional Administrator, Environmental Protection Agency, Region III and Middletown Township, Delaware County Sewer Authority.**

Civ. A. No. 79-3733.

United States District Court,
E. D. Pennsylvania.

Jan. 10, 1980.

Robert A. Korn, Philadelphia, Pa., for plaintiff.

Robert B. Surrick, Media, Pa., Sheldon Novick, Reg. Counsel, EPA, A. Serritella, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

To defray costs in constructing a two million dollar sanitary sewer, pumping station and appurtenances in a portion of Middletown Township, Delaware County, Pennsylvania, the Environmental Protection Agency (EPA) awarded Middletown Township Sewer Authority (Authority) a construction grant totalling three-quarters of the estimated project cost in May 1977. Eight months later the Authority contracted with plaintiff Mount Joy Construction Company (Mount Joy) to build this sewage system. During the summer and fall of 1978 Mount Joy submitted a number of requests for change orders involving three claims for changes in routing of sewer lines and claims for replacing broken curbing and differing site conditions. The engineer hired by the Authority refused to approve the change orders. To trigger administrative review by the Regional Administrator of EPA, Mount Joy requested a written rejection, which the Authority issued April 12, 1979. Six days later Mount Joy appeal-ed from the Authority's determination and characterized the appeal as a protest determination under 40 C.F.R. § 35.939(a). After conducting a hearing, in September the Regional Administrator ruled adversely to plaintiff and explained that

> Mt. Joy demands payment from the Authority for work performed which it claims was outside the scope of the original contract. The protest and appeal procedure created by 40 C.F.R. § 35.939 is limited to disputes concerning procurement. 40 C.F.R. § 35.939(a). Contract performance, contract administration and other post award matters including those Mt. Joy has raised, do not fall within the scope of "procurement" except to the extent that they reflect on the propriety of the contract award process. *Change orders are not covered under the procurement provisions of the subchapter and therefore are not protestable.* [footnotes omitted and emphasis added]

Plaintiff instituted this action for declaratory relief to determine that "procurement" as used in pertinent EPA regulations includes original acquisition of goods and services required by an original contract as well as subsequent change orders. Plaintiff also seeks a writ of mandamus directing the Regional Administrator to conduct further proceedings, or alternatively, ordering the Regional Administrator to resume review of plaintiff's protest filed with the Authority in accordance with its interpretation. The Authority then filed a motion to dismiss, which, construed as a motion for summary judgment, will be granted.[1]

In pertinent part 40 C.F.R. § 35.939(a) provides that

> [a] protest *based upon an alleged violation of the procurement requirements of §§ 35.936 through 35.938–9* of this subpart may be filed against a grantee's procurement action by a party with an

---

1. Defendant also challenged jurisdiction, which plaintiff predicated on 28 U.S.C. §§ 1331 and 1361. Irrespective of the merits of plaintiff's claim for a writ of mandamus, plaintiff has invoked the Federal Water Pollution Control Act, 33 U.S.C. § 1251, as the basis of jurisdic-tion. Defendant has not demonstrated lack of jurisdiction thereunder. Hence, defendant's motion to dismiss, which would have been appropriate under some circumstances, will be treated as a motion for summary judgment in light of our conclusion.

adversely affected direct financial interest. [emphasis added]

In tandem therewith, § 35.936(a) elaborates: §§ 35.936 through 35.939 set forth policies and minimum standards for procurement of architectural or engineering services as defined in § 35.937 and construction contracts as described in § 35.938 by grantees under all steps of grants for construction of treatment works . . .. *Other procurement of goods and services shall be conducted in accordance with the provisions of Part 33 of this subchapter.* [emphasis added]

Interpretation of federal *statutes* usually requires analysis of Congressional intent, which courts traditionally divine first and primarily from the "plain language" of the statute. *Andrus v. Allard,* 444 U.S. 51, 56, 100 S.Ct. 318, 322, 62 L.Ed.2d 210 (1979), *United Steelworkers of America v. Weber,* 443 U.S. 193, 202, 99 S.Ct. 2721, 2727, 61 L.Ed.2d 480 (1979) (Rehnquist, J., dissenting), *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 173, 98 S.Ct. 2279, 2291, 57 L.Ed.2d 117 (1978), *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Applying this methodology to interpretation of federal *regulations,* the clear or "plain language" of the regulations promulgated here by EPA and questioned by plaintiff support the conclusion reached by the Regional Administrator. § 35.939(j)(1) excludes "issues not arising under the procurement provisions of this subchapter". To be protestable the matter must arise under the *procurement* provisions of §§ 35.936 through 35.938–9. And the entire focus of these sections is upon the contract award, not contract administration, stage. For example, § 35.-939(b)(1) requires a dissatisfied bidder to file a protest

as early as possible during the procurement process (for example, immediately after issuance of a solicitation for bids) to avoid unnecessary delay to the procurement process. A protest authorized by paragraph (d) of this section must be received by the grantee within one week after the basis for the protest is known or should have been known, whichever is

earlier, (generally, in the case of formally advertised procurement, within one week after bid opening, if the basis for the protest is, or should have been known). [emphasis added].

Repeated references to the "procurement process" and avoiding delay thereto anticipate that portion of the proceedings when EPA awards the initial grant.

Moreover, when a complaining party files a protest, the grantee is initially responsible for resolving the dispute and must afford the complaining and other interested parties an opportunity to present arguments. The grantee must inform them of the procedure which the grantee expects to follow and to "[o]btain an appropriate extension of the period for acceptance of the bid and bond(s) of each interested party where applicable . . . ." All of this language in § 35.939 is directed toward and drafted in terms of a protest arising at the contractor selection stage. Nothing indicates that the protest procedure anticipated inclusion of disputes involving contract performance, contract administration or any other post-award matter.

■ Agency construction of the regulation language also comports with the protest procedure purpose, avoiding discrimination and unfairness at the contractor selection stage. § 35.936–13 provides that

[n]o specification for bids or statement of work in connection with such works shall be written in such a manner as to contain proprietary, exclusionary, or discriminatory requirements other than those based upon performance.

The protest procedure established by the regulations did not intend to involve EPA in contractual disputes handled and determined by state law. 40 C.F.R. § 35.-939(j)(3). Where the agency construction of the questioned regulation harmonizes with the obvious purpose of the regulatory scheme judicial deference thereto seems particularly appropriate. *See Mourning v. Family Publication Service, Inc.,* 411 U.S. 356, 369–72, 93 S.Ct. 1652, 1660–62, 36 L.Ed.2d 318 (1973).

■ Similarly, agency consistency in interpreting a regulation also supports judicial endorsement thereof. *Morton v. Ruiz*, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974), *Bowles v. Seminole Rock Co.*, 325 U.S. at 414, 65 S.Ct. at 1217. In *Point of Rocks, Frederick County, Maryland* (EPA Region III, April 20, 1979) EPA concluded that the retainage regulation, § 35.938–7, was not a procurement provision and therefore not protestable under § 35.-939. The Regional Administrator therein explained that

> [w]hile the regulation which the Grantee is alleged to have violated falls within the range of regulations referenced in 40 C.F.R. § 35.939(a), in order to be valid, a protest must also be based upon an alleged violation of the procurement requirements contained in this series of regulations.
>
> 40 C.F.R. § 35.938–7 does not define or limit the methods by which a grantee may obtain goods and services incident to the construction of a Federally funded waste-water treatment facility. The purpose of this regulation is to prescribe the grantee's rights to retain a portion of the dollar amount otherwise due a contractor under its contract. Its primary impact is felt not at the contractor's selection stage, but after contracts have been awarded and work performed. It is thus evident that EPA's retainage regulation is not a procurement requirement as that term is used in 40 C.F.R. § 35.939.

Accordingly, plaintiff's argument, briefly stated, lacks merit. Plaintiff argues that pursuant to § 35.939(a) a party adversely affected financially by the grantee's procurement decision may file a protest alleging a violation of the "procurement" requirements of 40 C.F.R. §§ 35.936 through 35.938–9. Therefore, a dispute arising under § 35.938–5, relating to negotiation of change orders, is protestable. However, numerous sections fall within the range of sections referenced in § 35.939, but an alleged violation of one of those sections does not automatically create a proper protest situation. As the Regional Administrator concluded in *Point of Rocks*, the alleged violation must involve a procurement, and not all of the sections between §§ 35.936 and 35.938–9 deal with procurement requirements.

■ To conclude, the "ultimate criterion" lies with the administrative interpretation, which is afforded controlling weight unless plainly erroneous or inconsistent with the regulation. *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977), *Immigration and Naturalization Service v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 1525, 23 L.Ed.2d 101 (1969), *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 276, 89 S.Ct. 518, 523, 21 L.Ed.2d 474 (1969), *Bowles v. Seminole Rock Co.*, 325 U.S. at 413–14, 65 S.Ct. at 1217. Courts demonstrate respect for interpretations made by officers and agencies responsible for administration of federal legislation, *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971), *United States v. City of Chicago*, 400 U.S. 8, 10, 91 S.Ct. 18, 20, 27 L.Ed.2d 9 (1970), *Udall v. Tallman*, 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1965), particularly where implementation of the regulatory scheme requires particular administrative or scientific expertise. *Federal Power Commission v. Florida Power & Light Co.*, 404 U.S. 453, 463, 92 S.Ct. 637, 643, 30 L.Ed.2d 600 (1972), *Smith Kline Corp. v. Food & Drug Administration*, 190 U.S.App.D.C. 210, 221, 587 F.2d 1107, 1118 (D.C. Cir. 1978). That the challenged regulation may be reasonably interpreted differently or that the court would have concluded otherwise if presented with the question in the first place cannot justify reversing an otherwise valid agency determination. *Udall v. Tallman*, 380 U.S. at 4, 85 S.Ct. at 795, *Unemployment Compensation Commission of the Territory of Alaska v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946), *Gray v. Powell*, 314 U.S. 402, 412, 62 S.Ct. 326, 332, 86 L.Ed. 301 (1941), *Lucas Coal Co. v. Interior Board of Mines Operations Appeals*, 522 F.2d 581, 585 (3d Cir. 1975), *Budd Co. v. Occupational Safety and Health Review Commission*, 513 F.2d 201, 204–05 (3d Cir. 1975). This principle

applies with full vigor "when the administrative practice at stake involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new". *Power Reactor Development Co. v. International Union of Electricians, Radio and Machine Workers,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961), quoting *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933). When parties contest the meaning of an administrative regulation deference is even more justified. *Udall v. Tallman,* 380 U.S. at 16, 85 S.Ct. at 801. *See also Builders Steel Co. v. Marshall,* 575 F.2d 663, 666 (8th Cir. 1978), *Refrigerated Transport Co. v. Interstate Commerce Commission,* 552 F.2d 1162, 1168–69 (5th Cir. 1977), *Talley v. Matthews,* 550 F.2d 911, 919 (4th Cir. 1977), *Concerned Citizens of Buck Hill Falls v. Grant,* 537 F.2d 29, 38 (3d Cir. 1976), *McCullough v. Redevelopment Authority of Wilkes-Barre,* 522 F.2d 858, 870 n. 32 (3d Cir. 1975), *Morgan Associates v. United States Postal Service,* 511 F.2d 1223, 1225 (2d Cir. 1975), *Board of Directors and Officers, Forbes Federal Credit Union v. National Credit Union Administration,* 447 F.2d 777, 784 (10th Cir.), *cert. denied,* 414 U.S. 924, 94 S.Ct. 233, 38 L.Ed.2d 158 (1973), *Jones v. Board of Education Cleveland City School District,* 474 F.2d 1232, 1233 (6th Cir. 1973), *Rossetti Contracting Co. v. Brennan,* 508 F.2d 1039, 1042–43 (7th Cir. 1975), *United States v. Lieb,* 462 F.2d 1161, 1166 (Em. App.1972), *Barrington Manor Apartments Corp. v. United States,* 459 F.2d 499, 502–03, 198 Ct.Cl. 298 (1972), *United States v. Consolidated Mines & Smelting Co.,* 455 F.2d 432, 445–46 (9th Cir. 1971), *Contractors Association of Eastern Pennsylvania v. Secretary of Labor,* 442 F.2d 159, 175 (3d Cir.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971), *Gulf Oil Corp. v. Hickel,* 140 U.S.App.D.C. 368, 373–74, 435 F.2d 440, 445–46 (1970).

Accordingly, defendant's motion for summary judgment will be granted.