Elmer S. BECK

v.

BOROUGH OF MANHEIM, J. Loverne Hiestand and John Winters.

Civ. A. No. 80–1092.

United States District Court, E. D. Pennsylvania.

Jan. 14, 1981.

S. R. Zimmerman, III, Lancaster, Pa., for plaintiff.

J. Michael Flanagan, Lancaster, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Although the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* (ADEA), generally proscribes arbitrary discrimination based on age in employment practices, *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), the Act does allow employers to use age as a legitimate criterion "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business . . ." 29 U.S.C. § 623(f)(1). *See Marshall v. Westinghouse Electric Corp.*, 576 F.2d

588 (5th Cir. 1978). Given the broad, humanitarian purposes of the Act, *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1979), these exceptions must be narrowly construed. *Houghton v. MacDonnell Douglas Corp.*, 553 F.2d 561 (8th Cir. 1977), 29 C.F.R. § 860.102(b). *Cf. Marshall v. Whirlpool Corp.*, 593 F.2d 715 (5th Cir. 1979) (remedial legislation such as the Occupational Safety & Health Act of 1970, 29 U.S.C. § 651 *et seq.* given liberal construction), *Paluso v. Mathews*, 573 F.2d 4 (10th Cir. 1978) (remedial legislation such as the Federal Coal Mine Health & Safety Act of 1969, as amended, 30 U.S.C. § 901 et seq., given liberal construction) and *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970) (remedial legislation such as Title VII given liberal construction). The employer bears the burden of showing that the mandatory retirement policy falls within the terms of the exception. *McMann v. United Air Lines, Inc.*, 542 F.2d 217 (4th Cir. 1976), *Hodgson v. First Federal Savings & Loan Association*, 455 F.2d 818 (5th Cir. 1972), 29 C.F.R. § 860.102(b). To establish an age requirement as reasonably necessary to normal operation of a particular business, the employer must show that the age requirement is related to the duties of the particular job which excludes employees because of age. *Equal Employment Opportunity Commission v. City of Janesville*, 480 F.Supp. 1375 (W.D.Wis.1979), *Murnane v. American Airlines, Inc.*, 482 F.Supp. 135 (D.D.C.1979). The necessary quantum of evidence to be adduced by the employer depends upon the extent and evitability of the risk of harm to which elimination of the age requirement exposes other employees and the public generally. *Arritt v. Grisell*, 567 F.2d 1267 (4th Cir. 1977), *Aaron v. Davis*, 414 F.Supp. 453 (E.D.Ark.1976). Where the risk of harm runs high and alternative measures lack certainty and adequacy, the Act countenances a greater degree of arbitrariness in setting the mandatory age requirement. *Usery v. Tamiami Trail Tours*, 531 F.2d 224 (5th Cir. 1976), *Aaron v. Davis, supra.*

In addition, the employer must show reasonable cause for believing that substantially all persons within the excluded class would be unable to perform efficaciously and safely the duties and responsibilities of the particular·job. *Arritt v. Grisell, supra, Usery v. Tamiami Trail Tours, supra. Cf. Hodgson v. Greyhound Lines, Inc.*, 499 F.2d 859, 863 (7th Cir. 1974), *cert. denied sub nom. Brennan v. Greyhound Lines, Inc.*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975) (employer need demonstrate only a "minimal increase in risk of harm ... to show that elimination of the hiring policy might jeopardize the life of one or more persons that might otherwise occur under the ... hiring practice"). The employer cannot rely on stereotyped notions or hunches without any empirical justification, *Aaron v. Davis, supra*, but the particular facts of each situation ultimately determine whether the employer can avail itself of the exception. *Aaron v. Davis, supra, Polstorff v. Fletcher*, 452 F.Supp. 17 (N.D. Ala.1978).

In the case at bar, plaintiff worked as a police officer in the Borough of Manheim, Pennsylvania, until terminated in January 1979 by virtue of Borough Ordinance No. 460, which required retirement of police officers at the age of sixty years. Plaintiff, now aged sixty-four years, brought this action and alleged that the borough's conduct violated the ADEA. Defendants, the borough, chief of police and mayor, now move for summary judgment and contend that the mandatory police retirement policy constitutes a bona fide occupational qualification as a matter of law. For present purposes defendants assume that the borough retired plaintiff solely by reason of his age.

By affidavit the borough's Chief of Police indicated that Manheim, a community of approximately 5800 people in Lancaster County, Pennsylvania, operates its own police force, which consists of a chief and five officers, who are assigned to regular patrol duty. No one officer performs exclusively administrative chores. The officers' duties include patrolling the borough and adjacent

areas, responding to emergency situations such as accidents and crimes, and enforcing the laws of the Commonwealth and ordinances of the borough. An officer must be "alert, have good judgment, be in good physical condition and be able to react quickly to situations", including the use of force to protect himself, citizens in the community, property and apprehending and restraining persons suspected of criminal activity.

The physical condition of the police force is particularly important in this borough not only because of the difficulty in arranging substitute coverage but also because the small size of the force makes backup help to an officer responding to an emergency situation often unavailable. Inability of any one police officer within the department to perform his functions effectively could result in serious, adverse consequences to the personal welfare of fellow officers, community residents and property.

By affidavit defendants also established the debilitating effects of superannuation.

A medical doctor, the director of physical medicine at Lancaster General Hospital, described the aging process to include several bodily changes and their effects. For example, the decrease in cardiovascular and pulmonary reserves, principally affecting endurance and stamina, impairs engagement in prolonged activities such as fast walking, jogging, running, chasing and any prolonged contact or struggle with others involving dragging, pushing or pulling. Prompt reaction to various stimuli takes more time. Diminution in strength, visual acuity and hearing competence also results. Finally, changes in the prostate gland require more frequent urination and consequent interruption of duty, which for a police officer could occur during surveillance or, more importantly, during apprehension of a criminal suspect or protection of the community.

As noted above, defendants must establish that the mandatory retirement policy was reasonably necessary to the normal operation of the "particular business", 29 U.S.C. § 623(f)(1), which, for the borough of Manheim, includes the unique responsibility of protecting the safety and welfare of citizens and property within the community and maintaining law and order. Given the uniform allocation of duties among borough officers, plaintiff's job fits well within this definition. Defendants have established not only that these duties required optimal physical conditioning but also that their mandatory retirement policy is "reasonably necessary" to accomplish that purpose. Importantly , the Act requires that the employer's age requirement be *reasonably*, not *absolutely* or *wholly*, necessary. To demand more than this showing would, in effect, rewrite the legislation itself. See *Andrus v. Allard*, 444 U.S. 51, 100 U.S. 318, 62 L.Ed.2d 210 (1979) (interpretation of federal statutes requires ascertainment of Congressional intent from the "plain language" of the statute), *Malatt v. Riddell*, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1968) (words of statutes should be interpreted in their "ordinary, everyday" sense). *Cf. Mount Joy Construction Co. v. Schramm*, 486 F.Supp. 32 (E.D.Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980) and *Mikkilineni v. United Engineers & Constructors, Inc.*, 485 F.Supp. 1292 (E.D.Pa.1980) (interpreting federal regulations in light of their "plain language"). The scant human resources of the Manheim borough police department impose upon the individual members of the force burdens which larger police forces do not confront. Within this context considerations of public safety merit paramount concern. *See Usery v. Tamiami*, 531 F.2d at 238 (where safety of fellow employees and third parties is threatened "the employer must be afforded *substantial discretion* in selecting specific standards which, if they err at all, should err on the side of preservation of life and limb") (emphasis added). In fact, a House report compiled during enactment of amendments to the ADEA listed law enforcement as an area in which the bona fide occupational qualification would be justified. See H.R.Rep.No.527, 95th Cong., 2d Sess. (1977). Particularly where the law enforcement department is small and the abilities and characteristics of individuals therein consequently have dispro-

portionate effects on each other and the duties they perform, substantial discretion should be afforded to the police department to make and implement this type of decision. Defendants have also shown a factual basis for believing that substantially all persons within the excluded class would be unable to perform effectively the duties which this particular job entailed. The affidavit of the doctor in connection with the one from the police chief sufficiently meets this burden within the present circumstances.

Interestingly, numerous courts have sustained regulations which provide for mandatory retirement for police officers. In *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), the court held that a statute requiring retirement of all state police officers at the age of fifty years did not defend the Equal Protection Clause of the Fourteenth Amendment. In *Malmed v. Thornburgh*, 621 F.2d 565 (3d Cir. 1980), the court sustained the legality of a Pennsylvania constitutional provision which required retirement of state judges at the age of seventy years. *See also Gardner v. Borough of Sayre*, 28 Pa.Cmwlth. 130, 367 A.2d 814 (1977) (where the court found no violation of the Pennsylvania Human Relations Act of 1955, as amended, 43 P.S. § 951 *et seq.*, in a borough ordinance requiring involuntary retirement of police officers at the age of sixty years) and *McIlvaine v. Pennsylvania State Police*, 6 Pa.Cmwlth. 505, 296 A.2d 630 (1972), *aff'd*, 454 Pa. 129, 309 A.2d 801 (1973), *appeal dismissed*, 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974), (comparing the similarities of the ADEA and Pennsylvania Human Relations Act, the court rejected a challenge to the Administrative Code of 1929, 71 P.S. § 65(d), which provided for mandatory retirement of state police officers at the age of sixty years). Approval of mandatory retirement provisions within these contexts, however, does not mandate a like result here. These cases decided only that the questioned retirement requirements did not offend the Equal Protection Clause of the Fourteenth Amendment. Notwithstanding, "[l]egislation authorized by § 5 of the Fourteenth Amendment can prohibit practices which pass muster under the Equal Protection Clause". *Arritt v. Grissell*, 567 F.2d at 1272. Congress relied upon § 5 in enacting the ADEA. *Carpenter v. Commonwealth of Pennsylvania*, 508 F.Supp. 148 (E.D.Pa., 1981) and cases cited therein. Therefore, the ADEA could outlaw conduct consonant with the Equal Protection Clause.

Having established adequately the bona fide occupational qualification, the borough, through its police department, could discriminate along otherwise illegal lines without reference to the actual physical condition of the terminated employee, plaintiff. *Marshall v. Westinghouse Electric Corp., supra.* This conclusion does not signal disagreement with the laudable purposes of the ADEA or approval of carving feckless exceptions which eventually could decimate or undermine the rule; rather, it acknowledges the unique and invaluable role of effective law enforcement in modern society, the teleological implications of a contrary result, and the occasionally ineluctable, though nonetheless regrettable, cost of vindicating the integrity of the law and enhancing the public weal at individual expense. As Mr. Justice Cardozo wrote, "[a]dherence to precedent must then be the rule rather than the exception if litigants are to have faith in the even handed administration of justice in the courts". *Nature of the Judicial Process*, 34 (1921). Defendant's motion for summary judgment will be granted.