### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

v.

### COMMONWEALTH of Pennsylvania, PENNSYLVANIA LIQUOR CONTROL BOARD.

Civ. A. No. 81–3983.

United States District Court,
E.D. Pennsylvania.

May 12, 1983.

Lanier E. Williams, Trial Atty., E.E.O.C., Philadelphia, Pa., for plaintiff.

Allen C. Warshaw, Deputy Atty. Gen., Com. of Pa., Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Plaintiff, Equal Employment Opportunity Commission (EEOC), moving for partial summary judgment, argues that defendant, Pennsylvania Liquor Control Board's (PaLCB), mandatory retirement policy, which resulted in the discharge of four employees,[1] violates the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., (ADEA). Cross moving for summary judgment, the PaLCB asserts that the discharged workers, former Liquor Law Enforcement Officers, were properly retired and that the challenged policy, which compels retirement at age sixty-five, is a bona fide occupational qualification (BFOQ) within the meaning of 29 U.S.C. § 623(f)(1). We consider these contentions below.

Passage of the ADEA represented a long-held desire to prohibit arbitrary age discrimination, *Equal Employment Opportunity Commission v. Wyoming,* —— U.S. ——, ——, 103 S.Ct. 1054, 1057, 75 L.Ed.2d 18 (1983), and to eliminate its presence in the work place. *Oscar Mayer Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). The ADEA does not, however,

---

1. The four retired employees are Joseph B. Carpenter, Herman Fedelli, Paul Zook and William C. Fisher.

necessarily prohibit employers from using age as a determinative employment criteria. Specifically, employers may engage in conduct which would otherwise violate the strictures of the ADEA so long as age represents a

> bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age.

29 U.S.C. § 623(f)(1).

▮ The "remedial and humanitarian" nature of the ADEA warrants a broad, liberal construction of the Act which suffices to effectuate the Congressional purpose, *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 193 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1979); this counsel against an expansive interpretation of the BFOQ defense. *Orzel v. City of Wauwatosa Fire Dep't.,* 697 F.2d 743, 748 (7th Cir.1983). To successfully invoke the BFOQ defense, an employer must *demonstrate* that the challenged policy is related to the duties of the particular job. *McMann v. United Air Lines, Inc.,* 542 F.2d 217 (4th Cir.1976); *Equal Employment Opportunity Commission v. City of Janesville,* 480 F.Supp. 1375 (W.D.Wis.1979). In making this showing, an employer may not rely upon "stereo-typical notions or hunches"; rather, it must adduce an "empirical justification" for its age limit. *Beck v. Borough of Manheim,* 505 F.Supp. 923, 925 (E.D.Pa. 1981).

In the case at bar, Edgar D. Free, the Director of the Bureau of Personnel of the PaLCB attested to the fact that the policy under scrutiny springs from the "generally recognized diminution of an individual's physical capabilities brought upon as a normal effect of the aging process". Additionally, John T. Hale, Director of the defendant's Bureau of Enforcement, swears that Enforcement Officers must remain in top physical condition and that the job frequently involves late night and lengthy hours, high speed chases, consumption of alcohol and that visual and aural acuity are

essential to the successful performance of the job. Continuing, Hale attests that each Enforcement Officer must be capable of performing all of the demanding duties which the job entails because no one officer has purely administrative duties. Hence, defendants argue that each Enforcement Officer must be in top physical condition and that the challenged policy, properly effectuating this goal, represents a BFOQ.

Defendants further support their position by reference to the affidavit of Dr. Elsworth R. Buskirk, the recipient of a Ph.D. in physiology. He swears that the aging process "diminishes the capabilities of individuals to perform many of the necessary tasks of Enforcement Officers". Critically, however, defendants did not rely upon Dr. Buskirk's *generalized findings* when they formulated the mandatory retirement policy.[2] More importantly, the Buskirk affidavit simply attests to the fact that some capabilities are diminished with age; it does not claim that Enforcement Officers lose their abilities to perform their jobs upon reaching age sixty-five. Simply stated, the Buskirk affidavit could be used to support a mandatory retirement policy at virtually any so-called advanced age. It utterly fails to demonstrate that Enforcement Officers are incapable of performing their duties upon attainment of the particular age selected for retirement. *See, Orzel v. City of Wauwatosa Fire Dep't.,* 679 F.2d at 755–56 (In order to assert the BFOQ defense, employers must demonstrate that the "*particular age* limitation adopted" justifies compulsory retirement solely on the basis of chronological age.)

Defendants' affidavits only establish that Enforcement Officers have physically demanding jobs and that the aging process brings about certain physiological changes which *generally* result in the diminution of specified physical abilities. With this in mind, defendants promulgated the retirement policy at bar.

Nevertheless, defendants argue that they have met their burden of asserting the

---

**2.** *See,* Defendant's Answer to Plaintiff's First Set of Interrogatories 7 and 9.

BFOQ defense because they need only prove that the age requirement is *"reasonable, not absolutely or wholly necessary"* to the successful performance of the job. *Beck v. Borough of Manheim,* 505 F.Supp. at 926. (emphasis in original).

This argument places undue weight upon *Beck*[3] and overlooks the applicable regulation which provides that in order to properly invoke the BFOQ defense, the employer must prove that

> (1) the age limit is reasonably necessary to the essence of the business, and either (2) that all or substantially all individuals excluded from the job involved are in fact disqualified, or (3) that some of the individuals so excluded possess a disqualifying trait that cannot be ascertained except by reference to age. If the employer's objective in asserting a BFOQ is the goal of public safety, the employer must prove that the challenged practice does indeed effectuate that goal and that there is no acceptable alternative which could better advance it or equally advance it with less discriminatory impact.

29 C.F.R. § 1625.6.

Specifically, defendant's argument, that age is a "reasonably" necessary criteria, focuses narrowly upon the statutory BFOQ provision, 29 U.S.C. § 623(f)(1), and the first part of the implementing regulation. 29 C.F.R. § 1625.6. Both of these contain the requirement that age limits in order to pass muster must be "reasonably necessary to the essence of the business". Defendant fails, however, to address the next portions of the regulation. They require proof that "all or substantially all of the individuals excluded … are in fact disqualified" or that excluded individuals possess the dis-

qualifying trait which "cannot be ascertained except by reference to age". Finally, the regulation provides that where, as here, the age requirement is justified upon notions of "public safety"[4] the employer must "prove" that the policy "effectuates that goal *and* that there is no acceptable alternative" which would better or equally advance public safety in a less discriminatory manner. 29 C.F.R. § 1625.6.

Even assuming that defendant has proven that age is "reasonably necessary" to the "essence" of its business, it has failed to meet either one of the next two prongs of the BFOQ defense; *i.e.,* that all or substantially all individuals are "in fact" disqualified or that the disqualifying trait cannot be determined except by reference to age. 29 C.F.R. § 1625.6. Defendant's praiseworthy objective of promoting "public safety" does not compel entry of judgment on its behalf, and is insufficient to defeat the entry of judgment against it, because it has not proven that the challenged practice fosters public safety, that Enforcement Officers over age sixty-five are necessarily incapable of promoting that goal and that "no acceptable" less discriminatory alternative exists. For example, the Hale affidavit proves that, at least with respect to firearms, defendant monitors the abilities of Enforcement Officers on a yearly basis. There is nothing to suggest that defendant could not similarly and in a manner less discriminatory than the present policy, monitor Enforcement Officers with respect to the strength, agility, hearing and visual acuity.

Admittedly, this interpretation of the regulation places a heavy burden upon defendants who assert a BFOQ defense.

---

**3.** In *Beck* we held that the mandatory retirement policy of a small, rural Borough was justified in light of the uniform allocation of duties among the police force's six members. We also stressed that the "particular facts of each situation ultimately determine whether the employer can avail itself of the [BFOQ] exception" and reaffirmed our support for the "laudable purposes of the ADEA". *Beck v. Borough of Manheim,* 505 F.Supp. at 925 and 927.

**4.** Defendants' motion for summary judgment asserts that Enforcement Officers possess "full police power" throughout the Commonwealth and are authorized to "arrest on view and seize evidence without warrant for violations of liquor laws". Responsibilities include "border patrols, investigation of unlawful manufacture, raids … and on-going surveillance". Enforcement Officers are issued firearms and, when appropriate, must defend themselves, fellow officers and the public. *See,* Defendant's Motion for Summary Judgment at 12–13.

Chief Justice Burger's recent dissent in *Equal Employment Opportunity Commission v. Wyoming, supra,* was predicated, in part, upon his fear that the burden of establishing a BFOQ was simply too heavy and that, as a result thereof, State personnel decisions would be subjected to unfavorable scrutiny by federal courts. —— U.S. at ——, 103 S.Ct. at 1072. In particular, the dissent observed that in order to successfully invoke the BFOQ defense, defendants need adduce a "high standard" of proof which, "[g]iven the state of modern medicine" may make it "virtually impossible to prove that *all* persons within a class are unable to perform a particular job" or that it is "impossible" to devise "appropriate individual tests". —— U.S. at ——, 103 S.Ct. at 1072 (Burger, Ch.J.; dissenting) (emphasis in original).

Even *if* defendant had met the demanding standard articulated by the Chief Justice, its proofs have not met the further requirement that legitimate concerns for public safety could not be realized through "acceptable alternatives". 29 C.F.R. § 1625.6.

▮ We accordingly conclude that defendants cannot successfully assert the BFOQ defense and that its admitted policy of forcing retirement at age sixty-five violates the ADEA. In so deciding we do *not* hold that defendant must employ workers who are unable to properly perform their jobs. Rather, we conclude that defendant's desire to maintain vital, alert and healthy Enforcement Officers can find proper expression in a policy which provides for periodic objective physical examinations designed to identify and terminate those who are unfit for continued employment. Alternatively, defendant could, possibly, establish an age limitation for Enforcement Officers so long as it can *prove* that age is a bona fide occupational qualification. *Equal Employment Opportunity Commission v.*

County of Allegheny, 705 F.2d 679, 681 (3d Cir.1983).

An appropriate order shall issue granting plaintiff's motion for partial summary judgment and denying defendant's cross-motion.[5]

---

**5.** Defendant's alternative basis for seeking summary judgment, that the ADEA cannot constitutionally apply to the states, is foreclosed by *Equal Employment Opportunity Commission v. Wyoming,* —— U.S. ——, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). *See also, Carpenter v. Pennsylvania Liquor Control Board,* 508 F.Supp. 148 (E.D.Pa.1981).