Elmer MAKI, Plaintiff,

v.

The COMMISSIONER OF EDUCATION OF the STATE OF NEW YORK and The Newfield Central School District, Defendants.

No. 82–CV–34.

United States District Court, N.D. New York.

June 30, 1983.

Peter Costanza, Ithaca, N.Y., for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y., for defendant Com'r of Educ.; Daniel L. Saxe, Asst. Atty. Gen., Albany, N.Y., of counsel.

Robert D. Stone, Albany, N.Y., for defendant Com'r of Educ.; Victor M. DeBonis and Kenneth Pawson, Albany, N.Y., of counsel.

Bond, Schoeneck & King, Albany, N.Y., for defendant Newfield Central School Dist.; David R. Sheridan, Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

### I

MINER, District Judge.

In this action, plaintiff claims a violation of the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. §§ 621 *et seq.*, in that he was required by state regulation to retire as a school bus driver of the Newfield Central School District solely because he had reached the age of sixty-five. Plaintiff seeks back-pay, declaratory and injunctive relief. Federal jurisdiction is asserted under 29 U.S.C. § 626(c).

This case was tried to the Court on March 23, 1983.[1] At the conclusion of the trial, the Court requested the parties to submit post-trial memoranda, specifically addressing the issue of statistics, as well as proposed findings of fact and conclusions of law.

### II

The underlying facts here are uncontroverted and quite simple. Plaintiff Elmer Maki attained his sixty-fifth birthday on April 17, 1982. Prior to that date, he had been employed by defendant Newfield Central School District (hereinafter "District") as a school bus driver. On June 19, 1981 the clerk of the District sent Mr. Maki a routine notice informing him that his employment as a school bus driver for the District was being continued through the summer vacation, that he would not have any actual duties during that vacation unless he worked in the summer recreation program or the school census. Finally, he was informed that he would continue in his regular assignment as a school bus driver during the 1981–82 school year.

However, included on the face of the June 19, 1981 letter was a typewritten notice advising plaintiff that "[a]s you are aware after your 65th birthday, which is on April 17, 1982, the laws of the State of New York mandates [sic] that you will no longer be eligible to drive a school bus." This notice was predicated upon 8 N.Y.C.R.R. § 156.3(b) which provides that "[a]ll drivers of school transportation conveyances shall be at least 21 years of age, but not in excess of 65 years of age."[2] Plaintiff alleges that

---

1. The following witnesses testified on behalf of plaintiff: Elmer Maki, plaintiff and Charles M. Hotchkiss, statistical expert. Mr. Richard Ahola, student transportation expert, testified for defendants.

2. This regulation was promulgated by the Commissioner pursuant to New York Education Law § 3624, which allows the Commissioner to "determine and define the qualifications of drivers" and "make the rules and regulations governing the operation of all transportation

this regulation is in violation of 29 U.S.C. §§ 623(a)(1) and 631.[3]

## III

■ It is clear, and all parties apparently agree, that plaintiff has proved a prima facie case of age discrimination. *See U.S. Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[4] However, where, as here, even if it is undisputed that an employee was terminated solely because of age, an employer may still escape liability under the Act if he demonstrates the so-called "BFOQ" exception, which allows an employer to base retirement solely on age "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1). *See EEOC v. County of Santa Barbara,* 666 F.2d 373, 375 (9th Cir.1982).

In *Campbell v. Connelie,* 542 F.Supp. 275, 278 (N.D.N.Y.1982) this Court determined that:

> In order to fit within the BFOQ statutory exception the defendants must satisfy the two-pronged test formulated in *Usery v. Tamiami Trail Tours,* 531 F.2d 224, 226 (5th Cir.1976). The burden is to demonstrate:
>
> (1) that the BFOQ it invokes is reasonably necessary to the essence of its business . . . and
>
> (2) that the employer has reasonable cause, *i.e.,* a factual basis for believing

that all persons within the class . . . would be unable to perform safely and efficiently the duties of the job involved, or that it is impossible or impractical to deal with persons over that age limit on an individualized basis. [citation omitted].

In other words, defendants have the burden of demonstrating *both* (1) and *either* the first or second prong of (2). *See, e.g., Harriss v. Pan American World Airways, Inc.,* 649 F.2d 670, 676 (9th Cir.1980); *Arritt v. Grisell,* 567 F.2d 1267, 1271 (4th Cir.1977);

However, many courts have held that the presence of an overriding safety factor, *i.e.* where safety is "the essence" of a particular business such as the transportation of passengers by bus or airplane, minimizes the level of proof required to establish a BFOQ. *Tuohy v. Ford Motor Co.,* 675 F.2d 842, 845 (6th Cir.1982); *EEOC v. County of Santa Barbara, supra,* 666 F.2d at 377; *Murnane v. American Airlines, Inc.,* 667 F.2d 98, 101 (D.C.Cir.1981); *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982); *Arritt v. Grisell, supra,* 567 F.2d at 1271; *Beck v. Borough of Manheim,* 505 F.Supp. 923, 925 (E.D.Pa.1981).[5] *Cf. Hodgson v. Greyhound Lines, Inc.,* 499 F.2d 859, 863 (7th Cir.1974), *cert. denied sub nom. Brennan v. Greyhound Lines, Inc.,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 822 (1975) (where the Seventh Circuit held that an employer who is engaged in inherently dangerous activities, or whose business is primarily safety-related, need only show "a minimal increase in risk of harm" to estab-

---

facilities used by pupils" in the State of New York.

**3.** Section 623(a)(1) of Title 29, United States Code, provides:

"(a) It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ."

29 U.S.C. § 631 provides, "[t]he prohibitions in this chapter shall be limited to individuals who are at least 40 years of age but less than 70 years of age . . . ."

**4.** Since the prohibiting language of the ADEA is similar to that of Title VII, courts generally have relied upon Title VII precedent in interpreting comparable ADEA provisions. *See, e.g., Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979).

**5.** *See also Aaron v. Davis,* 414 F.Supp. 453, 462 (E.D.Ark.1976) (where the court, in ruling that firefighters could not be mandatorily retired at age 62, specifically distinguished airline pilots and bus drivers from that group, noting that the risk is greater in bus drivers and jetliner pilots that a slight error in judgment would produce "tragic results").

lish the BFOQ defense). This requirement of a "minimal" showing when dealing with a "safety factor" is particularly pertinent when establishing the first prong or element of the *Usery* test. *See Usery v. Tamiami Trail Tours, Inc., supra,* 531 F.2d at 235–36.

■ Here, there is no question that a primary function of a school bus driver is the safe transportation of school children, and that the qualifications for school bus drivers are even more stringent than those required of inter-city bus drivers, N.Y. State Dep't of Motor Vehicles, Special Requirements for Bus Drivers Part 6, Trial Ex. B. Therefore, it cannot be said that the age requirement at bar, given the overwhelming concern for the safety of transported school children, is not reasonably necessary to the "essence of the business" of bus transportation. *Usery v. Tamiami Trail Tours, Inc., supra,* 531 F.2d at 236. Thus, the first prong of the *Usery* test is easily met here. *See also Tuohy v. Ford Motor Co., supra,* 675 F.2d at 844.

Defendants, in order to meet the requirements of the *Usery* test's second prong, have proffered statistical evidence indicating that there is a correlation between age and accident frequency. This evidence consists of two studies, one a 1968 State Education Department report entitled "Accident Involvements and the Maximum Age of School Bus Drivers," and the other a 1979 research report of the State Department of Motor Vehicles entitled "Accident Involvement of School Bus Drivers." Each report concludes that, "in general, school bus drivers under thirty years of age and over sixty-five years of age have a disproportionately large number of accidents, compared to school bus drivers in the intervening age groups." N.Y. State Department of Motor Vehicles Research Report: March, 1979, *Accident Involvement of School Bus Drivers,* p. 2.

Regardless of the efficacy of these statistics,[6] these reports, in and of themselves, are an insufficient showing "because an examination may reveal whether a job applicant possesses any of the passenger-endangering physical liabilities that many older people have. In other words, the correlation [between age and accident frequency] is to physical deficiencies, not to age *per se.*" *Usery v. Tamiami Trail Tours, Inc., supra,* 531 F.2d at 237. Therefore, to prevail under *Usery* defendants must present additional evidence that medical science has no accurate means of measuring physiological and psychological health independent of age; in other words, there must exist a factual basis for believing that all bus drivers age 65 and over are unable to perform their duties safely. *See Tuohy v. Ford Motor Co., supra,* 675 F.2d at 846; *but see Sposato v. Ambach,* 114 Misc.2d 942, 453 N.Y.S.2d 149 (Sup.Ct. Albany Co.1982).

However, this Court believes that the overwhelming safety consideration present at bar likewise lowers the burden of proof, or the quantum of evidence to be adduced by the employer, with respect to demonstrating this second prong of the *Usery* test. *See EEOC v. Santa Barbara, supra,* 666 F.2d at 375; *Arritt v. Grisell, supra,* 567 F.2d at 1271 n. 14; *Beck v. Borough of Manheim, supra,* 505 F.Supp. at 925. *See generally* Note, *The Age Discrimination in Employment Act of 1967,* 90 Harv.L.Rev. 380, 407 (1976). Here, defendants have convincingly met that reduced burden.

At trial, Mr. Ahola, an expert in pupil transportation and the kinds of tests available to evaluate who is a safe school bus driver, testified that one could not determine who was a safe driver solely using medical tests available. He stated that because of the paramount concern for the safety of school bus children and the prediction problems with available tests for school bus drivers, reliance on the data contained

**6.** Although there is some doubt as to the absolute reliability of these statistics, according to the testimony of Charles M. Hotchkiss, a doctoral candidate at Cornell University with some experience in statistical analysis, the reports should be accorded some degree of weight. Moreover, Mr. Ahola, an expert in student transportation, found at least the 1979 report to be of high empirical value.

in the 1968 and 1979 reports was both reasonable and prudent.

Moreover, as defendants point out, there exists strong support in case law for the proposition that as one grows older, physical examinations lose their predictive value. *See Rombough v. Federal Aviation Administration,* 594 F.2d 893 (2d Cir.1979) (where studies indicated that sudden incapacity due to medical defects becomes significantly more frequent in any group reaching age 60 and that these defects cannot be predicted accurately as to any specific individual on the basis of presently available scientific tests); *Usery v. Tamiami Trail Tours, Inc., supra,* 531 F.2d at 237 (where a medical expert testified that certain physiological and psychological changes that accompany the aging process decrease the person's ability to drive safely and even the most refined examinations cannot detect all of these changes); *Aaron v. Davis, supra,* 414 F.Supp. at 462 (where the court noted that degenerative physical and sensory changes accompanying aging are subtle and not readily detectable by physical examination).

Given the foregoing, and Mr. Ahola's testimony, it becomes clear that the psychological and physiological changes that occur due to age cannot be reliably tested in school bus drivers after age 65. When this fact is combined with the safety risks involved in operating a school bus, the 8 N.Y. C.R.R. § 156.3(b) maximum age of 65 for school bus drivers is both necessary and reasonable since, under these circumstances, the Act "countenances a greater degree of arbitrariness in setting the mandatory age requirement."[7] *Beck v. Borough of Manheim, supra,* 505 F.Supp. at 925. Accordingly, defendants have satisfied both prongs of the *Usery* test for establishing a BFOQ.

## IV

The foregoing constitutes the findings of fact and conclusions of law mandated by

Fed.R.Civ.P. 52(a). Entry of judgment in favor of each defendant is directed.

It is so ordered.

---

**7.** This Court expresses no opinion as to defendants' alternate position that since 8 N.Y.C.R.R. § 156.3(b) has a "rational basis," the Court should afford the regulation considerable "deference." *See EEOC v. City of Janesville,* 630 F.2d 1254, 1259 (7th Cir.1980).