567 F.2d 1267
 17 Fair Empl.Prac.Cas. 753, 15 Empl. Prac.
Dec. P 8012
James C. ARRITT, Appellant,
v.
Elwood G. GRISELL, Robert W. Munn, James T. Campbell, as
Members of the Police Civil Service Commission of the City
of Moundsville, West Virginia, and the City of Moundsville,
West Virginia, a Municipal Corporation, Appellees.
 No. 76-2358.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 4, 1977.
Decided Dec. 28, 1977.
 
 1
 Patrick S. Cassidy, Wheeling, W.Va. (O'Brien & Cassidy, Wheeling, W.Va., on brief), for appellant.
 
 
 2
 Thomas E. White, Moundsville, W.Va. (White & White, Moundsville, W.Va., on brief), for appellees,
 
 
 3
 Carin Ann Clauss, Sol. of Labor, Carl W. Gerig, Jr., Acting Associate Sol., Lois G. Williams and Peter B. Dolan, Attys., U.S. Dept. of Labor, Washington, D.C., on brief), as amicus curiae.
 
 
 4
 Before BRYAN, Senior Circuit Judge, and WINTER, Circuit Judge, and THOMSEN*, Senior District Judge.
 
 THOMSEN, Senior District Judge:
 
 5
 Appellant (plaintiff) applied for employment as a police officer in Moundsville, West Virginia. His application was denied by the City's Police Civil Service Commission on the sole ground that he was 40 years of age and therefore ineligible to take the required physical and mental examinations by reason of West Virginia Code (Michie 1976 Repl.Vol.) § 8-14-12, which establishes an 18-to-35-year age limit for applicants for original appointment to the police force of any city, such as Moundsville, with a population of 10,000 or more. Plaintiff then brought this action against the City and the three members of its Police Civil Service Commission.
 
 
 6
 The first count, brought under § 7(b) of the Age Discrimination in Employment Act of 1967 (ADEA),[1] and § 16(b) of the Fair Labor Standards Act of 1938 (FLSA),[2] alleges that such denial of plaintiff's application constituted a violation of § 4(a)(1) of ADEA.[3] The second count, brought under the provisions of 42 U.S.C. § 1983, alleges a deprivation of equal protection rights guaranteed by the Fourteenth Amendment. Plaintiff seeks a permanent injunction compelling defendants to employ him as a police officer, unpaid wages resulting from his non-employment, compensatory damages, liquidated damages, attorney's fees and costs.
 
 
 7
 Defendants moved to dismiss the action on the ground that it did not state a cause of action upon which relief can be granted. They also answered the complaint, asserting the West Virginia statutory age limitation. Plaintiff then filed a motion for summary judgment, supported by an unsworn "statement of material facts not in dispute." Defendants filed an answer to the motion for summary judgment, supported by an affidavit of the Chief of Police of the City of Moundsville, and sought summary judgment in their favor or, in the alternative, a determination that plaintiff was not entitled to summary judgment because of the existence of a dispute over genuine issues of material facts.
 
 
 8
 At the hearing on those motions, the district judge denied plaintiff's request for leave to file a counter-affidavit or offer medical testimony, denied plaintiff's motion for summary judgment, and entered summary judgment in favor of defendants.
 
 I. Plaintiff's Claim under ADEA
 
 9
 Defendants contend that the Supreme Court decision in National League of Cities, et al. v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), invalidates the 1974 amendments[4] to § 11(b) of ADEA,[5] which extend coverage of the anti-discrimination provisions of 29 U.S.C. § 623(a), see note 3 above, to include state and local government employers.
 
 
 10
 National League of Cities held that the extension[6] of the minimum wage and overtime provisions of FLSA[7] to state and local government employees engaged in areas of traditional governmental functions could not be upheld as a constitutionally valid regulation of interstate commerce, because the Tenth Amendment limits exercise of the powers of Congress under the Commerce Clause.[8]
 
 
 11
 Defendants argue that ADEA is similarly grounded on the Commerce Clause, and that National League of Cities should therefore be construed as having declared unconstitutional all extensions to the states and their political subdivisions of the definition of "employer" in the 1974 amendments to FLSA, including those extensions affecting the equal pay and age discrimination provisions,[9] as well as the extension affecting the wage and hour provisions. We note, however, that the Court limited its holding in National League of Cities to the commerce power, explicitly distinguishing "other sections of the Constitution such as the spending power, Art. I, § 8, cl. 1, or § 5 or the Fourteenth Amendment" as sources of congressional authority that might support intrusions into integral state operations which the Tenth Amendment would prohibit if grounded on the Commerce Clause. Id., at 852 n.17, 96 S.Ct. 2465.
 
 
 12
 In Usery v. Charleston County School District, etc., 558 F.2d 1169 (4 Cir. 1977), decided after the decision below, we held that National League of Cities did not preclude application of the provisions of the Equal Pay Act of 1963[10] to state and local governments because, we held, unlike the statutory provisions considered in National League of Cities, the Equal Pay Act was an exercise of the power of Congress under § 5 of the Fourteenth Amendment.
 
 
 13
 Similarly, in the instant case, after considering the legislative history[11] and the Court's opinion in Fitzpatrick v. Bitzer,427 U.S. 445, 453-56, & 453 n.9, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976),[12] we conclude that in enacting ADEA and in extending it to the states Congress exercised its powers under § 5 of the Fourteenth Amendment.
 
 
 14
 Defendants' second line of defense to plaintiff's statutory claim was to assert the "bona fide occupational qualification" (bfoq) defense provided by § 4(f)(1) of ADEA.[13] They supported this contention by filing an affidavit of the Chief of Police stating reasons in support of the age limitation. Plaintiff's motion for leave to file a counter-affidavit or to produce medical testimony was denied by the district court.
 
 
 15
 The district court adopted the standard applied in Hodgson v. Greyhound Lines, 499 F.2d 859 (7 Cir. 1974): that the employer need only demonstrate "a minimal increase in risk of harm for it is enough to show that elimination of the hiring policy might jeopardize the life of one more person than might otherwise occur under the present hiring practice." Id. at 863. We believe, however, that the proper standard is the two-pronged test formulated in Usery v. Tamiami Trail Tours, 531 F.2d 224 (5 Cir. 1976): that the burden is on the employer to show (1) that the bfoq which it invokes is reasonably necessary to the essence of its business (here the operation of an efficient police department for the protection of the public), and (2) that the employer has reasonable cause, i. e., a factual basis for believing that all or substantially all persons within the class (in our case, persons over 35 years of age) would be unable to perform safely and efficiently the duties of the job involved, or that it is impossible or impractical to deal with persons over the age limit on an individualized basis. Id. at 236.[14] Since plaintiff was not afforded an opportunity to rebut the affidavit offered by defendants, the case must be remanded to give plaintiff such an opportunity.
 
 
 16
 We intimate no opinion whether some or all of the facts and conclusions set out in defendants' affidavit, if found to have been established after both sides have had an opportunity to develop a full factual record, are or are not sufficient to sustain defendants' burden under the test prescribed herein.
 
 II. Plaintiff's Claims under § 1983
 
 17
 Plaintiff's other claim, based on 42 U.S.C. § 1983, that defendants' action violated his constitutional right to the equal protection of the laws, was also denied by the district court. We conclude, however, that the ruling of the district court on this point was justified by Massachusetts Board of Retirement, et al. v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). In Murgia, the Court upheld a Massachusetts statute establishing a mandatory retirement age for uniformed state police officers,[15] against a challenge that it denied equal protection of the laws in violation of 42 U.S.C. § 1983.[16] Applying the holding of San Antonio School District v. Rodriguez, 411 U.S. 1, 16, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Court reaffirmed its ruling that an equal protection analysis requires strict scrutiny of a legislative classification only when that classification (a) impermissibly interferes with the exercise of a fundamental right or (b) operates to the peculiar disadvantage of a suspect class.
 
 
 18
 The age restriction on applicants for police officer in certain cities prescribed by the West Virginia statute involves neither situation. The claimed right to government employment is not per se a " fundamental right".[17] Nor can the establishment of a class of applicants for the position of police officer limited to persons between the ages of 18 and 35 years properly be considered suspect.[18] A class denoted only by age does not constitute a "discrete and insular minority,"[19] such as race, sex, or national origin. Persons subject to age-based classifications are not " saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." Rodriguez, supra, 411 U.S. at 28, 93 S.Ct. at 1294. Since strict judicial scrutiny is not triggered by plaintiff's equal protection challenge under § 1983, rationality is the proper standard by which to determine whether the instant age classification violates equal protection. Murgia, supra, 427 U.S. at 312-14, 96 S.Ct. 2562.
 
 
 19
 Applying the rational basis standard, the Murgia Court found that compulsory retirement at age 50 was rationally related to furthering the legitimate interest identified by the state: "The purpose of the limitation was to protect the public by assuring the ability of state police to respond to the demands of their jobs."[20] In the instant case, as in Murgia, the primary function of the police is to protect persons and property and to maintain law and order. The State of West Virginia has a legitimate interest in assuring the physical preparedness of the police in Class I and II cities throughout the state. We cannot say that the 18-to-35 year age limitation imposed by West Virginia Code § 8-14-12 does not rationally further a legitimate state purpose, so far as the claim based on the equal protection clause, as distinguished from the statutory claim under ADEA, is concerned. Legislation authorized by § 5 of the Fourteenth Amendment can prohibit practices which would pass muster under the Equal Protection Clause, absent an act of Congress. Compare, e. g., Village of Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), and Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), with Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).
 
 
 20
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
 
 
 
 *
 Of the United States District Court for the District of Maryland, sitting by designation
 
 
 [1]
 29 U.S.C. § 626(b)
 
 
 [2]
 29 U.S.C. § 216(b)
 
 
 [3]
 29 U.S.C. § 623(a)(1)
 
 
 [4]
 Federal Labor Standards Amendments (FLS Amend.) of 1974, Pub. L. No. 93-259, 88 Stat. 55 (8 April 1974). See note 9 infra
 
 
 [5]
 29 U.S.C. § 630(b)
 
 
 [6]
 FLS Amend. of 1974, § 6(a)(1), which amended § 3(d) of FLSA (29 U.S.C. § 203(d))
 
 
 [7]
 29 U.S.C. §§ 206(a), (b), 207(a)
 8 U.S.Const., art. I, § 8, cl. 3.
 
 
 [9]
 Sec. 28(a) of FLS Amend. of 1974, 88 Stat. 74, amended § 11(b) of ADEA to include within the term "employer": " . . . (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the Government of the United States."
 
 
 [10]
 Pub. L. No. 88-38, 77 Stat. 56 (amending § 6(d)(1) of FLSA to prohibit sex-based wage differentiation), codified at 29 U.S.C. § 206(d)(1)
 
 
 [11]
 H.R. Rep. No. 805, 90th Cong., 1st Sess. (1967); S. Rep. No. 723, 90th Cong., 1st Sess., 13 (4 Nov. 1967) (Individual Views of Senator Javits); Age Discrimination in Employment: Hearings (Aug. 1-3, 15-17, 1967) on Age Discrimination Bills Before the Gen. Subcomm. on Labor of the House Comm. on Educ. and Labor, 90th Cong., 1st Sess. (23 Aug. 1967); Age Discrimination in Employment: Hearings (March 15-17, 1967) on Age Discrimination Bills Before the Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 90th Cong., 1st Sess. (26 April 1967). The similarity between ADEA and Title VII of the Civil Rights Act of 1964 (P.L. 88-352, 42 U.S.C. §§ 2000e-2000e-17) is not accidental. A proposal by Senator Javits to include discrimination on account of age in Title VII of the Civil Rights Act of 1964 was rejected, but § 715 of that Act directed the Secretary of Labor to make a study of the problem of age discrimination in employment; he made such a study and reported it to Congress. The 1966 amendments to FLSA, Pub. L. No. 89-601, in the bill which passed the Senate, included a provision to ban age discrimination in employment. That provision was eliminated by the Conference Committee; however, § 606 of P.L. 89-601 directed the Secretary to submit to the President "his specific legislative recommendations for implementing the conclusions" in his report. In his "Older Americans" message of January 23, 1967, President Johnson recommended to Congress passage of what became, after amendments, the ADEA of 1967. Speeches on the floor of both houses generally referred to the proposed ban on age discrimination in employment as being justified on bases similar to those supporting prohibitions already included in Title VII of the Civil Rights Act of 1964. See 113 Cong.Rec. 31254-57 (6 Nov. 1967); 113 Cong.Rec. 34738-55 (4 Dec. 1967). In 1972 Congress amended Title VII to extend coverage to the States as employers, and in 1974 Congress similarly amended ADEA. See S. Rep. No. 690, 93rd Cong., 2d Sess., 55 (22 Feb. 1974); H.R. Rep. No. 913, 93rd Cong., 2d Sess. (15 Mar. 1974). See also S. Conf. Rep. No. 758, 93rd Cong., 2d Sess. (28 Mar. 1974)
 
 
 [12]
 "There is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment. See, e. g., H.R. Rep. No. 92-238, p. 19 (1971). Cf. National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 151 (1976)."
 
 
 [13]
 29 U.S.C. § 623(f)(1)
 
 
 [14]
 The court in Tamiami indicated that considerations of public safety were relevant to the question of what was reasonably necessary to the essence of the employer's business. 531 F.2d at 235-36. Although we do not presently decide the issue, it is suggested in Note, The Age Discrimination in Employment Act of 1967, 90 Harv.L.Rev. 380, 407 (1976), that this factor is equally relevant to the strictness by which the efficacy of the age requirement and the practicality of individualized screening are to be judged
 
 
 [15]
 Mass.Gen.Laws, c. 32, § 26(3)(a) (1966): "Any (uniformed state police) officer . . . shall be retired by the state board of retirement upon his attaining age fifty . . . ."
 
 
 [16]
 Plaintiff in Murgia made no claims under ADEA, inasmuch as the action arose prior to the 1974 amendments to ADEA. See 427 U.S. 307, 310 n.2, 96 S.Ct. 2562, 49 L.Ed.2d 520
 
 
 [17]
 See Rodriguez, supra; Lindsey v. Normet, 405 U.S. 56, 73, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)
 
 
 [18]
 Compare, e. g., Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (race); Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (ancestry)
 
 
 [19]
 United States v. Carolene Products Co., 304 U.S. 144, 152-53 n.4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938)
 
 
 [20]
 427 U.S. at 314-15 n.7, 96 S.Ct. at 2567