**Harry FARKAS, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF HEALTH (Headed by David Axelrod, M.D., Commissioner)**

**and**

**New York State Department of Civil Service (Headed by Joseph A.F. Valenti, President of the Civil Service Commission), Defendants.**

No. 82–CV–511.

United States District Court, N.D. New York.

Sept. 2, 1982.

Harry Farkas, pro se.

Robert Abrams, Atty. Gen. of N.Y., Albany, N.Y., for defendants; Lawrence L. Doolittle, Asst. Atty. Gen., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* Jurisdiction is founded upon the provisions of 29 U.S.C. § 626(c).[1] Before this Court is defendant's application, pursuant to Rule

65, Fed.R.Civ.P., for a preliminary injunction.

### II

Plaintiff has been employed by the New York State Department of Health in the competitive civil service position of Associate Radiological Health Engineer for a period exceeding sixteen years. In January of 1980, plaintiff's immediate superior, the Principal Radiological Health Engineer, retired. Plaintiff claims to have been the only candidate eligible to compete for promotion to the vacant position at that time. Rather than appoint plaintiff, the Department of Health accepted applications from two candidates also employed in competitive civil service positions. Approval of either candidate by the Civil Service Commission was precluded, however, because neither candidate possessed the requisite qualifications. Thereafter, and ostensibly pursuant to a plan of reorganization, the position of Principal Radiological Health Engineer was abolished and several directorships were created.[2] Since the applicants referred to above qualified for two of the newly created positions, they were provisionally appointed thereto in June of 1980. It now appears that one of these two directorships has been vacated and abolished following the retirement of one of the provisional appointees.

Plaintiff attempted to participate in both the subsequent promotion examination and the open competitive examination for the remaining position but was precluded from doing so by Rule 3.4 of the State Civil Service Rules and Regulations.[3] The promotion examination was eventually can-

---

1. Section 626(c) of Title 29, United States Code, provides, in part: "Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter. . . ."

2. The reclassification was part of a reorganization plan to convert the Bureau of Radiological Health into a Division of Radiological Health to be made up of several bureaus. The newly created positions, at issue here, are the Director of the Bureau of Environmental Radiation and Director of the Bureau of Radiation

Control. "Charge of Discrimination" filed with EEOC by Harry Farkas, ¶ 3.

3. N.Y.Civ.Serv.Law R. 3.4 provides:
   *Ineligibility of promotion candidates for simultaneous open competitive examination*
   An employee who is a candidate in a promotion examination for a title unique to an agency or is a candidate in an interdepartmental promotion examination shall not be eligible to enter additionally an open competitive examination held at the same time for the same title.

celled, but plaintiff did participate in the open competitive examination.[4]

Believing that defendants were engaging in discriminatory promotion practices because of his age, plaintiff filed charges with the Equal Employment Opportunity Commission in August of 1980.[5] The Commission took the position that the "action by the Office of Public Health to change the Official Position Description to fit the previously unqualified candidate's experience qualifications [is] viewed as a subterfuge to discriminate against Mr. Harry Farkas." Letter from Gregory S. Kehoe to Mr. Powell (December 19, 1980). The Commission requested that Mr. Farkas be promoted to salary grade G–31 with appropriate back pay from the date each of the two new positions had been filled. *Id.* After conciliation efforts between the EEOC and defendants proved unsuccessful, plaintiff commenced this lawsuit.[6]

Plaintiff is seeking a preliminary injunction:

> prohibiting Defendants from permanently appointing to the position of Director, Bureau of Environmental Radiation, any person other than Plaintiff, including in such prohibition the enjoinment of Defendants from conducting or continuing to conduct, establishing or continuing to establish an eligible list from, or using or continuing to use any civil service examination to permanently appoint any person other than Plaintiff to the position of Director, Bureau of Environmental Radiation....

Motion for Preliminary Injunction, pp. 1–2. Defendants contend that injunctive relief is not appropriate because plaintiff can obtain an award of back pay should he prevail on the merits. *See Sampson v. Murray,* 415 U.S. 61, 91, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974). However, plaintiff maintains that monetary compensation could not "adequately repair the effects of mental anguish, humiliation, and damage to my reputation as a professional engineer...." "Plaintiff's Response" to motion to dismiss, ¶ 4.

### III

In order for plaintiff to obtain a preliminary injunction, he must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Sperry Int'l Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78 (2d Cir.1981); *Jackson Dairy, Inc. v. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). Moreover, "the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction" in a government personnel case is greater than is required under traditional standards, *Sampson v. Murray, supra,* 415 U.S. at 91–92, 94 S.Ct. at 953–954, and a mere showing of temporary loss of income does not meet this burden. *Id.* at 90–91, 94 S.Ct. at 952–953. This is so because back pay can be awarded should the aggrieved party ultimately prevail on the merits. *DeFries v. Haarhues,* 488 F.Supp. 1037 (C.D.Ill.1980); *Jones v. Cle-*

---

4. Plaintiff alleges that an "oral test for the position, as part of the civil service examination for permanent appointment to the position, the other part of the examination to be a competitive rating of candidates' training and experience, is scheduled to be conducted on or about June 4, 1982." Complaint, ¶ 11(a), p. 9. This Court has not yet been made aware of any permanent appointment to the position.

5. It is not clear whether the actual date was August 14, 1980 or August 19, 1980. However, this question need not be resolved for disposition of the instant motion.

6. Ordinarily, a non-federal employee must commence state proceedings before bringing suit under the ADEA. 29 U.S.C. § 633(b). Here, however, the New York State Division of Human Rights would not have had jurisdiction of plaintiff's claim because that agency's authority extends to complaints concerning persons between the ages of eighteen and sixty-five only. N.Y.Exec.Law § 296(3–a). Mr. Farkas was sixty-seven years old when he filed his charge with the EEOC in 1980.

*land,* 466 F.Supp. 34 (N.D.Ala.1978). For preliminary injunctive relief to issue, then, plaintiff must demonstrate some harm other than that which is inherent in his not being promoted. *See Equal Employment Opportunity Commission v. Bay Shipbuilding Corp.,* 480 F.Supp. 925, 928 (E.D.Wis. 1979).

■ While an award of back pay is deemed an adequate remedy at law barring injunctive relief, back pay generally is not available against a state in its capacity as employer. In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), suit was brought against the Director of the Illinois Department of Public Aid seeking injunctive and declaratory relief for alleged noncompliance with federal regulations concerning the disbursement of funds under the Aid to the Aged, Blind, and Disabled (AABD) program. The district court and the court of appeals agreed that state officials had not complied with the governing federal regulations. The district court, by permanent injunction, required compliance with federal regulations and, *inter alia,* ordered state officials to release AABD benefits wrongfully withheld to those eligible persons who had applied for benefits prior to the court's preliminary injunction; the Court of Appeals for the Seventh Circuit affirmed. On certiorari, the Supreme Court held that the eleventh amendment barred that portion of the district court's decree providing for retroactive benefits. This Court perceives no significant difference between the retroactive award of AABD benefits in *Edelman* and an award of back pay to Mr. Farkas in the case at bar.

■ However, under appropriate circumstances, Congress can abrogate a state's eleventh amendment immunity. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In *Fitzpatrick,* present and retired male employees of the State of Connecticut brought a class action alleging that certain provisions of the state's statutory retirement benefit plan discriminated against them because of their sex, in violation of Title VII of the Civil Rights Act of 1964, which, as amended, extends coverage to the States as employers. Although the district court ruled in favor of the class, it declined to award retroactive retirement benefits, holding that such relief was precluded by the eleventh amendment and the Supreme Court's decision in *Edelman.* The Court of Appeals for the Second Circuit affirmed the denial of retroactive relief. On certiorari, the Supreme Court reversed this part of the lower court's decision and held "that the Eleventh Amendment, and the principle of state sovereignty which it embodies ... are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Fitzpatrick v. Bitzer, supra,* at 456, 96 S.Ct. at 2671. The Court found, moreover, "that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts." *Id.* at 456, 96 S.Ct. at 2671. It is, therefore, the concurrence of legislation passed pursuant to Congress' authority to enforce the fourteenth amendment, and specific authorization for private suits against the states, that will deny to a state the protection of the eleventh amendment against retroactive money awards.

■ Whether back pay can be awarded in the case at bar, therefore, depends upon whether the ADEA was enacted pursuant to § 5 of the fourteenth amendment. This Court finds that the ADEA was enacted pursuant to the Commerce Clause of the Constitution and not the fourteenth amendment.[7] *Campbell v. Connelie,* 542 F.Supp.

---

7. *But see Arritt v. Grisell,* 567 F.2d 1267 (4th Cir.1977). In *Arritt,* the court held that the ADEA, and the 1974 amendment extending the purview of the Act to the States, were implicitly passed pursuant to the fourteenth amendment, *Arritt v. Grisell, supra,* 567 F.2d 1270–71,

n. 11. However, *Arritt* was decided prior to the Supreme Court's decision in *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). In *Pennhurst,* the Court noted that courts should not be quick to attribute to Congress the unstated

275 (N.D.N.Y.1982), citing *EEOC v. State of Wyoming,* 514 F.Supp. 595 (D.Wyo.1981) probable jurisdiction noted, 454 U.S. 1140, 102 S.Ct. 996, 71 L.Ed.2d 291 (1982). Therefore, although the ADEA can be applied to the several states consistently with the tenth amendment to the Constitution under limited circumstances, *cf. National League of Cities v. Usery,*[8] 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the eleventh amendment precludes an award of back pay against a state for violation of the provisions of that Act. Since a back pay award is not available to plaintiff, he will have no means to recover any lost increase in wages to which he may be entitled, accruing during the pendency of this action. Accordingly, plaintiff has met his burden of establishing irreparable injury. Having done so, plaintiff must demonstrate a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor.

■ Here, plaintiff has demonstrated a likelihood of success on the merits by making a prima facie showing of discriminatory treatment which defendants have failed to rebut. In this Circuit, application of the Title VII discriminatory treatment test, originally set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), has been extended to actions brought pursuant to the ADEA. *Geller v. Markham,* 635 F.2d 1027, 1032 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). Under this test, a prima facie case of discriminatory treatment is made out by the plaintiff's showing:

(i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Geller v. Markham, supra,* 635 F.2d at 1032, citing *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824. "The burden then shifts to the employer to go forward with evidence of 'some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 1032.

Here, plaintiff has made a prima facie showing by establishing that he is a member of the class of people within the protection of the ADEA, that he applied for and was qualified for the newly created directorships, that despite his qualification he was not promoted, and that the positions were subsequently filled by the appointment of applicants younger than he. Accordingly, it was incumbent upon defendants to come forward with "some legitimate nondiscriminatory reason for [plaintiff's] rejection." *Id.* However, defendants have offered no reason, nondiscriminatory or otherwise, why plaintiff was not promoted to one of the new directorships and the two younger applicants were. This Court believes, therefore, that plaintiff has demonstrated a likelihood of success on the merits and has met this Circuit's test for the granting of a preliminary injunction.

### IV

In determining that plaintiff is entitled to preliminary relief, this Court is mindful

---

intent to act under its authority to enforce the fourteenth amendment.

**8.** In *National League of Cities, supra,* the Court held that the 1974 amendments to the Fair Labor Standards Act extending the statutory minimum wage and maximum hours provisions to employees of states and their political subdivisions exceeded congressional power under the Commerce Clause of the Constitution because they directly displaced the states' freedom to structure integral operations in areas of

traditional government functions in contravention of the tenth amendment. *See United Transportation Union v. Long Island Rail Road Company,* 455 U.S. 678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982). In *Campbell v. Connelie, supra,* this Court held that the provisions of the ADEA could not, consistently with the tenth amendment, preclude the mandatory retirement of New York State Troopers at the age of fifty-five years. *See EEOC v. State of Wyoming, supra.*

of the potentially disruptive effect injunctive relief might have upon the state in its capacity as employer. Accordingly, Mr. Farkas shall receive a salary commensurate with the position to which he seeks appointment during the pendency of this action. However, Mr. Farkas shall continue to serve in his present capacity as Associate Radiological Health Engineer.

In addition, plaintiff will be required to post a sufficient bond, securing the state against any loss, which it may eventually be entitled to recover, due to additional wages paid during the pendency of this action. *See Ohio Oil Company v. Conway,* 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929).

The foregoing shall constitute this Court's Findings of Fact and Conclusions of Law as required by the provisions of Rule 52(a), Fed.R.Civ.P.

It is so Ordered.