**Robert W. JOHNSON, August T. Stern, Jr., Thomas C. Doyle, James Lee Porter, Equal Employment Opportunity Commission, Mitchell Paris, and Robert L. Robey, Appellees,**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, a Municipal Corporation, Appellant,**

and

**Hyman A. Pressman, as Chairman, and Donald D. Pomerleau, Calhoun Bond, Edward C. Heckrotte, Sr., Charles Daughterty, Paul C. Wolman, Jr., and Curt Heinfelden, as Members of the Board of Trustees, Fire & Police Employees Retirement System of the City of Baltimore, Defendants.**

No. 81–1965.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 1, 1983.

Decided April 4, 1984.

Rehearing and Rehearing En Banc Denied June 29, 1984.

L. William Gawlik, Asst. City Sol., Ambrose T. Hartman, Deputy City Sol., Baltimore, Md. (Benjamin L. Brown, City Sol., on brief), for appellant.

Paul D. Bekman, Baltimore, Md. (William H. Engelman, Harriet E. Cooperman, Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, Md., on brief), and Justine S. Lisser, E.E.O.C., Washington, D.C. (David L. Slate, General Counsel, Vella M. Fink, Acting Associate Gen. Counsel, E.E.O.C., Washington, D.C., on brief), for appellees.

Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

MURNAGHAN, Circuit Judge:

Plaintiff, Robert W. Johnson, a Baltimore City firefighter, five of his fellows, and the EEOC, as intervenor, brought suit under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, complaining that the Baltimore City pension provisions for firefighters impermissibly discriminated on grounds of age.[1] In their action, instituted on May 29, 1979, plaintiffs sought primarily an injunction prohibiting compelled retirement before an employee had reached sixty-five.

Plaintiff Johnson and four of the other five individual plaintiffs had attained the age of sixty years when the suit was filed.[2] A consensual temporary restraining order was entered permitting the five individuals to continue in active employment status with the fire department pending resolution of the case. When suit was brought, Plaintiff James L. Porter was only thirty years of age. The district court determined, however, that Porter had standing inasmuch as uncertainty as to the prospective mandatory retirement age could presently affect his decision whether to remain an employee of the fire department or to seek employment elsewhere. After a court trial, the district court entered judgment for the plaintiffs. *Johnson v. Mayor and City Council of Baltimore*, 515 F.Supp. 1287 (D.Md.1981), *cert. denied*, 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982).

For some time, prior to 1962, the overall retirement system covering Baltimore City employees generally applied to firefighters. Under that plan, retirement was not mandatory until the employee had attained the age of seventy years. In 1962, however, the City established the Fire & Police Employees Retirement System (F & PERS), which in part provided pension benefits for all uniformed Fire Department personnel. The City obtained enabling legislation from the State of Maryland for the F & PERS at the urging of the union, to which the individual plaintiffs belonged.

Among the motivating factors for the adoption of the F & PERS was a belief that exposure to medical disablement in stressful circumstances increased with age. The F & PERS accordingly provided for mandatory retirement at the age of fifty-five (sixty in transitional cases involving firefighters in service on July 1, 1962, the date when the new plan went into effect).

We first consider plaintiffs' claims based on the equal protection clause and 42 U.S.C. § 1983. For Fourteenth Amendment purposes, plaintiffs have established neither inherent unreasonableness nor a denial of equal protection amounting to constitutional deprivations. The legislation was well within the discretionary powers of the deliberating body, state or federal, especially since "rationality" rather than

---

1. Complaint was also made of violations of the Fair Labor Standards Act, 29 U.S.C. § 215 (an enforcement provision incorporated into the ADEA) and the equal protection clause of the Fourteenth Amendment to the United States Constitution, triggering violation of 42 U.S.C. § 1983.

2. The mandatory retirement age was generally 55, but, for those already employed as firefighters when the mandatory retirement age became effective, a transitional age of 60 was in effect.

"strict judicial scrutiny" is the test. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).[3]

The plaintiffs' complaint, in reality, boils down to an objection that there is too much equality in a requirement that all firefighters retire at fifty-five. The factual scenario is entirely devoid of any indicated attempt to punish individual employees or to seek an unwarranted advantage for the City. The City established the F & PERS in part to address concerns about the continued ability of the City's firefighters to respond efficiently and effectively to the demands of firefighting. The legislation simply reflected a preference for an inflexible age determination in lieu of case-by-case examination leading to decision on the individualized basis of each and every employee's medical condition, as monitored and remonitored from time to time.

We therefore conclude that (a) there are not sufficient grounds to support a determination that there has been a violation of the equal protection clause, and that (b) therefore, no basis exists for the award of remedies under 42 U.S.C. § 1983.

We next consider plaintiffs' claim under the Age Discrimination in Employment Act of 1967. At the time the City established the F & PERS, the ADEA had not yet been enacted. The Act prohibits "various forms of age discrimination in employment, including the discharge of workers on the basis of age." *Equal Employment Opportunity Commission v. Wyoming*, 460 U.S. 226, ——, 103 S.Ct. 1054, 1058, 75 L.Ed.2d 18 (1983); 29 U.S.C. § 623(a). In 1974 the ADEA was extended generally to the states and their political subdivisions as employers. 29 U.S.C. § 630(b)(2). It also was made applicable to a number of federal instrumentalities, but not to the agencies hiring federal police or firefighters. *See* 29 U.S.C. § 633a(a).

The Act initially protected workers between the ages of forty and sixty-five. 29 U.S.C. § 631. In 1978, Congress raised the maximum age to seventy. Age Discrimination in Employment Act Amendments of 1978, 92 Stat. 189.[4]

The ADEA, however, does not flatly prohibit consideration by employers of age in all instances. Instead, consistent with its underlying purpose of eradicating *arbitrary* age discrimination, the Congress recognized that "criteria based on age are occasionally justified." *EEOC v. Wyoming*, 460 U.S. at ——, 103 S.Ct. at 1058. The ADEA therefore deems lawful certain otherwise prohibited employment practices

where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age.

29 U.S.C. § 623(f)(1).

In *EEOC v. Wyoming, supra,* the Supreme Court provided guidance for determining the existence of a *bona fide* occupational qualification. There the Court considered the State of Wyoming's policy of mandatory retirement of its game wardens at age fifty-five. The Court rejected the state's contention that the Tenth Amendment,[5] as construed in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), rendered Wyoming immune from federal intervention with respect to the regulation of its game wardens.

The Court did not, however, declare the state's mandatory retirement age invalid under the ADEA. To the contrary, it reiterated that the mandatory retirement age could remain undisturbed if the state could prove that age was a *bona fide* occupational qualification for game wardens.

---

**3.** This Court has already so concluded. *Arritt v. Grisell*, 567 F.2d 1267, 1271–72 (4th Cir.1977).

**4.** Plaintiffs, nevertheless, limit their request for relief to periods prior to their attaining 65.

**5.** The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the States respectively, or to the people."

Perhaps more important, appellees remain free under the ADEA to continue to do *precisely what they are doing now*, if they can demonstrate that age is a "bona fide occupational qualification" for the job of game warden. [Citation omitted]. Thus, in distinct contrast to the situation in *National League of Cities, supra*, [426 U.S.] at 848 [96 S.Ct. at 2472], even the State's discretion to achieve its goals *in the way it thinks best* is not being overridden entirely, *but is merely being tested against a reasonable federal standard.*

*EEOC v. Wyoming*, 460 U.S. at ——, 103 S.Ct. at 1062.[6] The Court remanded the case for a determination as to whether the mandatory retirement at fifty-five was in fact a *bona fide* occupational qualification, *i.e.*, did it satisfy a reasonable federal standard test.[7]

In light of the Court's disposition of *EEOC v. Wyoming*, we must initiate a search for a "reasonable federal standard" by which to test whether age is a *bona fide* occupational qualification for the City of Baltimore's firefighters. Congress has, however, made the search a simple one. With respect to federal firefighters, Congress has provided the standard. The same Congress that extended the ADEA to the states and their political subdivisions reinvigorated the requirement mandating retirement as a general matter at fifty-five[8] for federal police and firefighting employees. Pub.L. 93–350, 88 Stat. 356, 5 U.S.C. § 8335(b).[9] The Legislative History accompanying the passage of P.L. 93–350 reveals the Congressional concern for the taxing nature of firefighting endeavors:

> The history of retirement legislation dealing with law-enforcement officers and firefighters shows Congressional intent to liberalize retirement provisions so as to make it feasible for these employees to retire at age 50. This intent has been based on the nature of the work involved and the determination that these occupations should be composed, insofar as possible, of young men and women physically capable of meeting the vigorous demands of occupations which are far more taxing physically than most in the Federal Service. They are occupations calling for the strength and stamina of the young rather than the middle age. Older employees in these occupations should be encouraged to retire.

Sen.Rep. No. 93–948, 93d Cong., 2nd Sess. in 1974 U.S.Code Cong. & Ad.News 3698, 3699.[10]

Where Congress itself has deemed age to be a *bona fide* occupational qualification

---

**6.** Emphasis supplied for the phrase "but is merely being tested against a reasonable federal standard."

**7.** On remand, a jury found that mandatory retirement at fifty-five was a *bona fide* occupational qualification for Wyoming's game wardens. *See EEOC v. Wyoming*, No. C 80–0336 B (D.Wyo.1983).

**8.** The age could be extended to sixty upon exemption in individual cases by the head of the federal agency involved.

**9.** In pertinent part, 5 U.S.C. § 8335(b) states:

> (b) A law enforcement officer or a firefighter who is otherwise eligible for immediate retirement under section 8336(c) of this title shall be separated from the service on the last day of the month in which he becomes 55 years of age or completes 20 years of service if then over that age. The head of the agency, when in his judgment the public interest so requires, may exempt such an employee from

automatic separation under this subsection until that employee becomes 60 years of age....

**10.** Prior to the passage of the bill, Robert Hampton, then-chairman of the U.S. Civil Service Commission, provided the Senate Committee on Post Office and Civil Service with the Commission's views on the bill. In discussing the then-existing retirement scheme, Mr. Hampton observed:

> The present preferential computation for law enforcers and firefighters was proposed and justified as a means for keeping the service young by encouraging the retirement of persons who, because of the vigorous demands of their positions, are prematurely less able to perform required duties.
>
> ....
>
> The ineffectiveness of the present early law-enforcement retirement provision (in accomplishing its intended purpose of assuring a young, vigorous Federal law-enforcement organization) is readily apparent ....

*Id.* at 3705.

for federal firefighters, we perceive no justification for ignoring the Congressional mandate in ascertaining "a reasonable federal standard" by which to measure firefighting in the City of Baltimore. Both federal and city firefighters are engaged in extremely stressful and hazardous activities designed to promote public safety. Absent a determination that age, specifically no more than fifty-five as a general rule, is a *bona fide* occupational qualification for firefighters, we would be compelled to conclude that Congress, in authorizing the automatic retirement of federal police and firefighting personnel, adopted an occupational qualification that is not, or might not be, *bona fide*. A court should not lightly make such a determination as to Congressional purpose.

■ The existence of a Congressional determination of the reasonable federal standard for firefighters distinguishes the fact pattern in the instant case from that in *EEOC v. Wyoming*. No comparable federal statute exists insofar as federal game wardens are concerned. It therefore devolved upon the district court in *Wyoming* to ascertain, on remand, by consideration of conflicting expert testimony, the acceptability of the mandatory retirement provisions. Similarly, in the absence of Con-

gressional guidance, a trial would have been necessary to determine whether the City's use of age is a *bona fide* occupational qualification for its firefighters. In such an instance, we might well be persuaded by the thorough, impeccably reasoned opinion, issued by Judge Alexander Harvey II after a bench trial below.[11] Instead, we reverse the decision below, in recognition of the fact that, by Congress' own reasonable federal standard, age is a *bona fide* occupational qualification for the job of firefighting in the City of Baltimore.[12]

■ Our conclusion is compelled further by the well-established rule that resolution of an unresolved and serious constitutional question should be avoided if a reasonable statutory interpretation would lead to a result obviating the necessity for a resolution of an issue of basic law.[13] Here we avoid not one, but three, such potentially serious constitutional questions.

First, for Judge Harvey, the power of Congress, under § 5 of the Fourteenth Amendment, to extend the ADEA to state and local governments appeared to have been settled by this court's decision in *Arritt v. Grisell*, 567 F.2d 1267 (4th Cir. 1977).[14] The validity of that conclusion, however, is questionable after *EEOC v. Wyoming, supra.*[15] We therefore perceive

---

11. We note in passing that Judge Harvey rendered his decision almost two years prior to the Supreme Court's decision in *EEOC v. Wyoming, supra.*

12. To the extent that the dissent may suggest that retirement of federal firefighters at age 55, under the provisions of 5 U.S.C. § 8335(b), may be voluntary rather than mandated, I respectfully suggest that the actuality is otherwise, and was known by Congress to be so. Prior to enactment of the statute in 1974, the letter of Robert Hampton, referred to *supra* in n. 10, observed that under the bill which ultimately became 5 U.S.C. § 8335(b) "employees in these occupations would *generally* be subject to *mandatory* retirement at age 55." (Emphasis supplied). The employees to whom reference was made were "employees whose duties are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States or employees whose duties are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus."

13. "[W]hen the validity of an act of the Congress is drawn in question, and ... a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971), *quoting Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932).

14. "... after considering the legislative history ... we conclude that in enacting ADEA and in extending it to the states Congress exercised its powers under § 5 of the Fourteenth Amendment." *Id.* at 1269–71.

15. In *EEOC v. Wyoming*, the Supreme Court relied exclusively on the Commerce Clause. Justice Brennan, writing for the bare majority of five justices, specifically left open whether the result could be reached "as an exercise of Congress's powers under § 5 of the Fourteenth Amendment." *Id.*, 460 U.S. at ——, 103 S.Ct. at

that the question is both unresolved and close as to whether § 5 of the Fourteenth Amendment generates the power to permit, in the circumstances here presented, congressional extension of the ADEA to state and local governments.[16]

Second, the power of Congress under the Commerce Clause to extend the ADEA to City firefighters may yet remain unanswered after *EEOC v. Wyoming*. The mandatory retirement provision at issue in *EEOC v. Wyoming* affected only game wardens with statewide powers. *National League of Cities v. Usery, supra*, on the other hand concerned "... the States' abilities to structure employer-employee relationships in such areas as firefighters, police protection, sanitation, public health, and parks and recreation." *Id.* 426 U.S. at 851,[17] 96 S.Ct. at 2474.

The firefighters in the instant case were far more localized than state game wardens, being employees of a single political subdivision, and so more removed from the federal government and its national concerns. Each case was decided by a vote of five to four.[18] Whether the Supreme Court would view the City's firefighters as more akin to Wyoming's game wardens, or to the employees at issue in *National League of*

---

2064. However, Justice Stevens, concurring, concluded: "In final analysis, we are construing the scope of the power granted to Congress by the Commerce Clause of the Constitution." *Id.,* 460 U.S. at ——, 103 S.Ct. at 1065. The four dissenting justices explicitly concluded that § 5 of the Fourteenth Amendment was not a source of Congressional power. Since equality is apparent in a mandatory retirement at fifty-five provision applicable to all, enactment of a federal statute purporting to invalidate such state law may not readily be deemed to amount to enforcement of the provisions of the Fourteenth Amendment. That implies that there simply was not a majority for the proposition that § 5 of the Fourteenth Amendment could be resorted to for purposes of extending the ADEA to the states and their political subdivisions, insofar as a mandatory retirement age of 55 for firefighters and policemen is concerned.

**16.** It is to be observed that *Arritt v. Grisell, supra,* is not, itself, necessarily wrongly decided, only that it has, perhaps, been too broadly interpreted. It concerned a state law prohibiting outright any application for appointment to a position as a police officer by someone over 35 years of age. The plaintiff was 40. During the next fifteen or twenty, or more, years of his life, assuming he was qualified in all other respects, the inequality of treatment as between him on the one hand, and all police officers of his age or older on the other, would be irrational and, hence, patent. Such disparity might well constitute a denial of equal protection. If so, under § 5 of the Fourteenth Amendment, extension of the ADEA to the state, to that extent, would, in any event, regardless of how the question might be resolved in the case *sub judice,* be permissible since there would be violation of a right protected by the Fourteenth Amendment. However, the mandatory retirement provisions, applicable at 55, reach all firefighters (save those in transition, all of whom, equally, must retire at 60), and an analogous difference in treatment of those similarly situated simply is not present.

The identical distinction from the case before us is applicable to *EEOC v. County of Los Angeles,* 706 F.2d 1039 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984) (All applicants 35 and older for positions as deputy sheriff or fire helicopter pilot automatically and invariably turned down).

*Cf. Stewart v. Smith,* 673 F.2d 485 (D.C.Cir. 1982).

**17.** The majority repeatedly expressed concern for "essential police and fire protection," *id.* at 846, "fire suppression endeavors," *id.,* and "fire prevention," *id.* at 851, 96 S.Ct. at 2474.

**18.** The majority in *National League of Cities* consisted of Chief Justice Burger, and Stewart, Blackmun, Powell and Rehnquist, JJ., with Brennan, White, Marshall and Stevens, JJ. in dissent. Assuming that Justice Stewart's vote would have coincided with that of Justice O'Connor, the decision in *EEOC v. Wyoming* is the product of a shift in position of Justice Blackmun. "The key to understanding what remains of *National League of Cities* lies in the mind-set of Justice Blackmun, who was the only Justice to join the majorities in both *National League of Cities* and EEOC (but who neglected to explain his change of heart in EEOC) [footnote omitted]." *The Supreme Court, 1982 Term,* 97 Harv.L.Rev. 70, 206 (1983). We are particularly leery of seeking to resolve a close constitutional issue where such resolution requires the prediction as to how an individual Supreme Court Justice would vote. Especially is that so where one choice involves firefighters, the decision that the Commerce Clause power did not extend to them having been deemed by him to be "necessarily correct," and not impinging on "areas such as environmental protection," *see National League of Cities,* 426 U.S. at 856, 96 S.Ct. at 2476 (Blackmun, J. concurring), while the other involves game wardens, an occupation different in some not insignificant respects from that of firefighters.

*Cities v. Usery,* is again both an unresolved and narrow question, beyond the scope of this case as a consequence of our disposition on a reasonable grounds of statutory interpretation.[19]

Third, the constitutional separation of powers doctrine remains a viable restriction on the exercise of both legislative and adjudicative power. "[W]e consistently have emphasized that the federal lawmaking power is vested in the legislative, not the judicial, branch of government...." *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 95, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981); *see generally Springer v. Philippine Islands,* 277 U.S. 189, 201–2, 48 S.Ct. 480, 482, 72 L.Ed. 845 (1928). Congress has, in 5 U.S.C. § 8335(b), adopted a legislative answer to the question of whether the purely chronological age of not over 55 is or is not a *bona fide* occupational qualification for firefighting. It is questionable whether we can constitutionally supply the answer instead by an adjudicative, case-by-case approach. The question appears to be the same when raised for firefighters, in San Francisco or in Baltimore.[20] The situation may not fit the intended accommodation of differing factual circumstances lending themselves to case-by-case resolution.

In the United States of America we are blessed with a Constitution which, both in words and in wise interpretation over the years, is intelligently flexible. It will bend before it breaks, displaying a pliability enabling it to accommodate to new challenges and to address old, persistent problems. Still it cannot simply be altogether without structure. Too many repeated folds or creases can lead to a tear along one of the lines of stress. The concerns of a constitutional nature potentially present, if all should have to be addressed, might lead to an unfortunate rupture. Fortunately, we are spared the necessity to explore the three unclear issues of basic law to which we have alluded. We need not grapple with whether legislation would have led to enforcement of the provisions of the Fourteenth Amendment. We need not explore just how far principles extend in terms of the power of the federal government to impinge on the exercise of integral governmental functions by the states. Nor must we decide whether action in a particular area is legislative or judicial. "It is well settled that this Court will not pass on the constitutionality of an Act of Congress if a construction of the statute is fairly possible by which the question may be avoided." *United States v. Clark,* 445 U.S. 23, 27, 100 S.Ct. 895, 899, 63 L.Ed.2d 171 (1980); *see also Johnson v. Robinson,* 415 U.S. 361, 366–67, 94 S.Ct. 1160, 1165–1166, 39 L.Ed.2d 389 (1974).

We conclude, therefore, that the ADEA did not establish for the firefighters of Baltimore City a bar to mandatory retirement at age fifty-five (sixty for transitional cases). *EEOC v. Wyoming,* properly

---

**19.** The dissent has perceived "no substantial distinction between the firefighters in this case and the game wardens in *Wyoming.*" It should be enough simply to point out in rejoinder that Congress *has* mandated retirement at 55 for firefighters but *has not* done so for game wardens.

Moreover, Justice Brennan, distinguishing, not overruling, *National League of Cities,* found, in *Wyoming,* "the degree of federal intrusion in this case is sufficiently less serious than it was in *National League of Cities.*" A crucial difference is that one dealt with game wardens, the other specifically with firefighters, among others.

To supplement that proposition, one may ponder the consideration that it has been judicially recognized that "fire fighting is among the most hazardous of all occupations." *Aaron v. Davis,*

414 F.Supp. 453, 457, 462 (E.D.Ark.1976). Firefighters afford frontline protection against physical injury or death, not to mention property loss, through conflagration. The same cannot be said for game wardens, and impairment of state ability "to structure ... integral operations," *Wyoming,* 460 U.S. at ——, 103 S.Ct. at 1062, is simply less evident in their case. Federal intrusion is indeed "minimal" in the case of game wardens. *Wyoming,* 460 U.S. at ——, 103 S.Ct. at 1065, n. 17.

**20.** Could one properly denominate the approach "adjudicative," rather than legislative, if, depending on what two different "factfinders" decided, firefighters at Fort Meade, Maryland would have to retire at 55, while those at the Aberdeen Proving Grounds could continue to 70?

viewed, encourages the conclusion that the ADEA and 5 U.S.C. § 8335(b) are not mutually exclusive or antagonistic, but should be read to exist in a harmonized way, especially when we thereby avoid close and unresolved constitutional questions.[21] Finally, by viewing the provisions of the City ordinance as properly enforceable, we enhance the promotion of harmony between state and federal legislation.[22]

Accordingly, the judgments below are reversed and the case remanded for entry of judgments in favor of the defendants.

REVERSED.

HARRISON L. WINTER, Chief Judge, dissenting:

While I agree with the majority, for the reasons assigned by it that there is no merit in plaintiffs' claims based on the equal protection clause of the fourteenth amendment,[1] I do not agree that Congress has established a bona fide occupational qualification (BFOQ) for Baltimore City firefighters. Indeed, I question that what Congress has done with regard to federal employees has any relevance at all to a

correct decision of this case. Of course, I recognize that the proscription of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, against mandatory retirement of employees under the age of seventy may be modified "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business," 29 U.S.C. § 623(f)(1). The district court in the instant case, however, found as a fact that a BFOQ for mandatory retirement before age seventy was not proved, and I do not think that its finding was clearly erroneous.

I therefore respectfully dissent.

## I.

Baltimore City requires firefighters who became such after July 1, 1962 to retire at age fifty-five and all firefighters in service on July 1, 1962 to retire by age sixty. It is uncertain, however, at what age Congress has mandated retirement for federal firefighters. To me, certainty in what Congress has prescribed and exact comparabili-

21. *Cf. Bowman v. United States Department of Justice, Federal Prison System,* 510 F.Supp. 1183, 1186 (E.D.Va.1981), *aff'd by unpublished opinion,* No. 81-2143 (4th Cir.1982); *Palmer v. Ticcione,* 576 F.2d 459, 465 n. 7 (2d Cir.1978).

Citing a quotation in *Wyoming* of *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the dissent expresses the view that Congress may assert supremacy by requiring private parties to follow a legislative provision at odds with a federal statute imposing "mandatory retirement on a small class of its own workers." There is no doubt that such may be the case. But, when the problem arises in the context of whether Congress meant to force differing rules on one of its constituent sovereigns opposed to those applicable to itself in virtually identical circumstances it becomes far more likely that Congress has not so intended.

22. Numerous cases have addressed similar factual situations, apparently without such considerations in mind, simply assuming, without discussion, that (a) there was congressional power to extend the ADEA to all state or municipal employees, including firefighters, (b) the power had been fully exercised in enacting the ADEA, extending it to police and firefighters, and (c) without regard to the incongruity in treatment of federal and state firefighters, unless a b.f.o.q.

was made out to the satisfaction of the factfinders, on an individual case-by-case basis, a mandatory retirement age imposed by a state or political subdivision was *ipso facto* illegal. The cases proceeding on the line advocated by the plaintiffs, and presenting the risk of differing results, case-by-case and political-subdivision-by-political-subdivision, lack persuasiveness for us inasmuch as they do not address the very questions which appear to be controlling. *E.g., EEOC v. County of Los Angeles, supra; Orzel v. City of Wauwatosa Fire Department,* 697 F.2d 743 (7th Cir.1983); *EEOC v. City of St. Paul,* 671 F.2d 1162 (8th Cir.1982); *EEOC v. County of Santa Barbara,* 666 F.2d 373 (9th Cir.1982); *Aaron v. Davis,* 414 F.Supp. 453 (E.D.Ark.1976).

Other cases provide no assistance, inasmuch as they deal with private, not state or municipal employers. *E.g., Tuohy v. Ford Motor Co.,* 675 F.2d 842 (6th Cir.1982); *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224 (5th Cir.1976); *contra, Maki v. Commissioner of Education of the State of New York,* 568 F.Supp. 252 (N.D.N.Y.1983).

1. I am also in agreement with the district court and the majority that plaintiff James L. Porter, although only thirty-years old when suit was brought, had standing to sue.

ty with what Baltimore has prescribed is the beginning point for determining if there is a congressionally established BFOQ for firefighters.

The legislation treating federal firefighters is set forth in 5 U.S.C. § 8335(b) and it reads:

> A law enforcement officer or a firefighter who is otherwise eligible for immediate retirement under section 8336(c) of this title shall be separated from the service on the last day of the month in which he becomes 55 years of age or completes 20 years of service if then over that age. The head of the agency, when in his judgment the public interest so requires, may exempt such an employee from automatic separation under this subsection until that employee becomes 60 years of age. The employing office shall notify the employee in writing of the date of separation at least 60 days in advance thereof. Action to separate the employee is not effective, without the consent of the employee, until the last day of the month in which the 60-day notice expires.[2]

When §§ 8335 and 8336 are read together, it appears that a federal firefighter *may* retire as early as age fifty-five, *if* he has completed the minimum service requirements of § 8336 so as to be entitled to an annuity (18 years), and *if* his department head does not conclude to require him to work a longer period. He may, however, be required to work until he reaches age sixty, and, indeed, he may be required to work beyond age sixty if (a) his department head is delinquent in giving him the 60 days' notice of separation, or (b) he has not completed 18 years of service as required by § 8336(c)(2)(B). It is thus quite clear from the language of the statutes that Congress, unlike Baltimore City, has not opted for the bright-line test of age fifty-five as the mandatory age for retirement (except for certain transitional employees). This makes it impossible for me to say that there is a federally established BFOQ for firefighters at age fifty-five.

Section 8335 in its existing form was enacted in 1974 when, by Pub.L. 93–350, 88 Stat. 356, the mandatory retirement age of seventy was altered to the present alternatives. The legislative history of Pub.L. 93–350 does recite, as the majority sets forth, a congressional intent to liberalize retirement provisions so as to make it feasible for firefighters and law-enforcement officers to retire at age *fifty*. The rationale of the intent is, of course, "the vigorous demands of occupations which are far more taxing physically than most in the Federal Service." Sen.Rep. No. 93–948, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 3698, 3699. It must be remembered, however, that this language was used in relation to *voluntary* retirement, not *involuntary* retirement, as Baltimore City requires. With respect to involuntary retirement, the committee report states, "Additionally, the bill provides for the mandatory retirement of an eligible employee at age 55 or ·after 20 years, whichever occurs later." *Id.* at 3701. Thus, the legislative history, with its emphasis on "eligible" employee and resort to an alternative formula under which an employee may not be required to retire until he has completed twenty years of service, belies the existence of congressional intent, perceived by

---

**2.** Section 8336(c), referred to in the text of § 8335(b), states:

> (c)(1) An employee who is separated from the service after becoming 50 years of age and completing 20 years of service as a law enforcement officer or firefighter, or any combination of such service totaling at least 20 years, is entitled to an annuity.
>
> (2) An employee is entitled to an annuity if the employee—

> (A) was a law enforcement officer or firefighter employed by the Panama Canal Company or the Canal Zone Government at any time during the period beginning March 31, 1979, and ending September 30, 1979; and
>
> (B) is separated from the service before January 1, 2000, after becoming 48 years of age and completing 18 years of service as a law enforcement officer or firefighter, or any combination of such service totaling at least 18 years.

the majority, to fix age fifty-five as a BFOQ.

Even if it could be said that Congress established a BFOQ for federal firefighters, I do not think that this would be relevant to a decision of this case. The thesis of the majority was advanced and rejected in an analagous context in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). Footnote 17 of the *Wyoming* opinion, 460 U.S. at —, 103 S.Ct. at 1063, 75 L.Ed.2d at 33, discussed the possible application of the third prong of the inquiry delineated in *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), for determining the immunity of a local government from an otherwise legitimate exercise of federal power to regulate commerce, i.e., that "it must be apparent that the States' compliance with the federal law would directly impair their ability 'to structure integral operations in areas of traditional government functions'." *Hodel* at 288, 101 S.Ct. at 2366. The footnote reads:

> Even if the minimal character of the federal intrusion in this case did not lead us to hold that ADEA survives the third prong of the Hodel inquiry, it might still, when measured against the well-defined federal interest in the legislation, require us to find that the nature of that interest "justifies state submission." *We note, incidentally, that the strength of the federal interest underlying the Act is not negated by the fact that the federal government happens to impose mandatory retirement on a small class of its own workers.* See Brief for Appellees 19. But cf. n. 5 supra (no upper age limit on Act's protection of federal employees.) *Once Congress has asserted a federal interest, and once it has asserted the strength of that interest, we have no warrant for reading into the ebbs*

*and flows of political decisionmaking a conclusion that Congress was insincere in that declaration, and must from that point on evaluate the sufficiency of the federal interest as a matter of law rather than of psychological analysis.* (Emphasis added)

*Wyoming*, as I read it, tells us that the broad requirements of ADEA are not to be constricted as a matter of law by what treatment Congress has afforded to comparable federal employees.[3] Stated otherwise, the fact that Congress may require some federal firefighters to retire at age fifty-five does not excuse Baltimore from proving the facts necessary to satisfy 29 U.S.C. § 623(f)(1).

## II.

Since in my view of the case there is no compelling federal BFOQ, I am brought to a consideration of the correctness of the district court's ground of decision. It found as a matter of fact that Baltimore had not proved a BFOQ for mandatory retirement of firefighters at age fifty-five. From my study of the record, I cannot conclude that this finding is clearly erroneous.

I would affirm the judgment of the district court.

---

**3.** The majority also reads *Wyoming* as casting doubt on the power of Congress to extend ADEA to Baltimore firefighters and it justifies its holding as a result obviating the need for a constitutional adjudication. I disagree with this reading of *Wyoming*. I see no substantial distinction between the firefighters in this case and the game wardens in *Wyoming*. Since ADEA was held to be validly applied to the latter, the validity of application to the former would seem clear.